# In the United States Court of Appeals
## for the Eleventh Circuit

Case No. 26-100044

JESSE LEE,

*Plaintiff/Appellant,*

v.

CITY OF GULFPORT & JAMES O'REILLY

*Defendants/Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF FLORIDA
D.C. No. 8:23-cv-2996 (COVINGTON, V)
_____

INITIAL BRIEF OF APPELLANT JESSE LEE
_____

Marcy I. LaHart, Esq.
MARCY I. LAHART, P.A.
861 S. 40th Street
Tacoma, WA 98418
Phone (352) 545-7001
Facsimile (888) 400- 1464
marcy@floridaanimallawyer.com

*Counsel for Plaintiff/Appellant*

# CERTIFICATE OF INTERESTED PERSONS

*Jesse Lee v. City of Gulfport & James O'Reilly*
Case No. 9:20-cv-81175

Pursuant to 11th Circuit Rule 26.1-1, Appellant Jesse Lee provides the following list of persons and entities that have an interest in the outcome of this appeal:

Covington, Virginia M. Hernandez, District Court Judge

LaHart, Marcy Esq., Counsel for Appellant

Lee, Jesse, Appellant

O'Reilly, James, Appellee

Ring, Dustyn, Counsel for Appellee

Roper, Donovan, Counsel for Appellee

C1 of 1

# STATEMENT REGARDING ORAL ARGUMENT

The Appellant does not request oral argument. The briefs and the record adequately present the factual and legal arguments raised in this case. Accordingly, Appellant does not believe that oral argument will significantly assist the Court's resolution of the issues.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES ......................................................C1

STATEMENT REGARDING ORAL ARGUMENT ............................................... i

TABLE OF CONTENTS.................................................................................... ii

TABLE OF CITED AUTHORITIES ................................................................. iv

STATEMENT OF JURISDICTION........................................................................ 1

STATEMENT OF THE ISSUES............................................................................ 2

STATEMENT OF THE CASE .............................................................................. 3

STANDARD OF REVIEW .................................................................................. 9

SUMMARY OF THE ARGUMENT .................................................................... 10

ARGUMENT ................................................................................................... 11

I.  Gulfport's Trespass Policy violates the Substantive Due Process Clause ........ 14

   A. Issuing individuals trespass warnings banning them from city properties
      permanently in the absence of conduct violating any ordinance or law,
      without notice of the basis of the trespass warning or a right to appeal based
      solely upon hearsay is "conscience shocking"  ........................................... 18

   B. Gulfport's Trespass Policy is facially unconstitutional  .............................. 16

II. City Manager James O'Reilly is not entitled to Qualified Immunity ............... 26

III. Gulfport is liable for its unconstitutional Trespass Policy............................... 30

IV. Gulfport's Trespass Policy violates the Procedural Due Process Clause ........ 32

CONCLUSION .................................................................................................. 36

CERTIFICATE OF COMPLIANCE....................................................................... 37

CERTIFICATE OF SERVICE .......................................................................... 37

**TABLE OF CITED AUTHORITIES**

**Cases**

*Ammon Ra Sumrall v. Wilcox*, 154 F.4th 1304 (11th Cir. 2025)............................26

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) .................................................................26

*Baxter v. Roberts*, 54 F.4th 1241 (11th Cir. 2022) ...................................................31

*Brown v. City of Mich. City*, 462 F.3d 720 (7th Cir. 2006) ....................................26

*Catron v. City of St. Petersburg*, 658 F.3d 1260 (11th Cir. 2011) ................... 12, 13

*Catron v. City of St. Petersburg*, 658 F.3d 1260 (11th Cir. 2011) ..........................27

*Chabad Chayil, Inc. v. Miami-Dade Cnty.*, 48 F.4th 1222 (11th Cir. 2022)...........32

*Christmas v. Harris County*, 51 F.4th 1348 (11th Cir. 2022)....................................9

*Cyr v. Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536 (D. Vt. 2014), ....23

*Doe v. City of Lafayette*, 377 F.3d 757 (7th Cir. 2004) ...........................................26

*Gagnon v. Scarpelli*, 411 U.S. 778 (1973)...............................................................21

*Grech v. Clayton Cty.*, 335 F.3d 1326,1329 (11th Cir. 2003) ...................................7

*Hoefling v. City of Miami*, 811 F.3d 1271 (11th Cir. 2016) ....................................32

*Kennedy v. City of Cincinnati*, 595 F.3d 327 (6th Cir. 2010)..................................29

*McCreight v. AuburnBank*, 117 F.4th 1322 (11th Cir. 2024)....................................9

*Neely v. Elmore Cty.*, U.S. App. LEXIS 6965 (11th Cir. Mar. 26, 2025)...............24

*Patrick v. McGuire*, 2024 LX 240996 (M.D. Fla. Nov. 15, 2024)..........................14

*Sering Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 157 (W.D.N.Y. 2025) ............35

*Sheets v. City of Punta Gorda*, 2026 U.S. Dist. LEXIS 10522 (M.D. Fla. Jan. 21, 2026) ........................................................................................................32

*Sheets v. City of Punta Gorda*, 2026 U.S. Dist. LEXIS 10522 (M.D. Fla. Jan. 21, 2026) .................................................................................................. 19, 23

*Sheets v. City of Punta Gorda*, 2026 U.S. Dist. LEXIS 10522 M.D. Fla. Jan. 21, 2026) ........................................................................................................17

*Sheets v. City of Punta Gorda*, 415 F. Supp. 3d 1115 (M.D. Fla. 2019) .................15

*Sheets* v. Woelk, 2026 U.S. Dist. LEXIS 25827 (M.D. Fla. Feb. 9, 2026) ............16

*Simmons v. UPS Inc.*, No. 25-11261, 2026 U.S. App. LEXIS 4805, at *3 (11th Cir. Feb. 18, 2026) ........................................................................................9

*Taylor v. Rodriguez*, 238 F.3d 188 (2d Cir. 2001 .................................................23

*Valley v. Sec'y, Fla. Dep't of Corr.*, 2018 U.S. App. LEXIS 29307 (11th Cir. Oct. 17, 2018) ........................................................................................................21

*Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300 (11th Cir. 2003). ..............24

*Wate v. Kubler*, 839 F.3d 1012 (11th Cir. 2016) ..................................................12

*Zomerfeld v. Kingston Twp. Police*, 2023 U.S. Dist. LEXIS 21981 (M.D. Pa. Feb. 9, 2023) ........................................................................................................25

Statutes

42 U.S.C. §1983 ......................................................................................... 30

28 U.S.C §1291 ......................................................................................... 1

Florida Statute § 810.08 ................................................................ 12, 34

## STATEMENT OF JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C §1291.

# STATEMENT OF THE ISSUES

1) Whether the trial court erred in ruling that Appellee City of Gulfport's Trespass Policy facially and as applied does not violate the substantive due process clause of the Fourteenth Amendment of the United States Constitution.

2) Whether the trial court erred in ruling that Appellee James O'Reilly is protected by qualified immunity from liability for banning individuals from city property permanently without an explanation or a meaningful opportunity to appeal.

3) Whether the trial court erred in ruling that Appellee City of Gulfport's trespass policy facially and as applied does not the procedural due process clause of the Fourteenth Amendment of the United States Constitution.

**STATEMENT OF THE CASE**

**Course of Proceedings**

Appellant Jesse Lee has been banned forever[1] from the City of Gulfport's City Hall and Building Department under threat of arrest pursuant to a City policy "whereby supervisors of individual city facilities are empowered to issue trespass warning whenever they have reason to believe an individual has caused or is likely to cause a disruption of service or put the safety of staff or the public at risk." (Doc. 1-1) Lee was not told the basis for the issuance of the trespasses, nor was he informed of any ability to appeal either the issuance or permanent duration of the trespasses. (Doc. 87-1)

Lee initiated a lawsuit against the Defendant City of Gulfport in the Middle District of Florida in December of 2023. In the claims that are relevant to this appeal, Lee sought damages and declaratory and injunctive relief for violation of his Fourteenth Amendment rights of substantive and procedural due process. (Doc. 1) On August 12, 2024, Lee filed an amended complaint, adding as a defendant Gulfport's City Manager James O'Reilly, (hereinafter "O'Reilly") the individual that directed the trespass warnings to be issued to Lee. (Doc. 28)

---

[1] The first written "Trespass Warning" Lee received on September 4, 2020 was issued for an "Indefinite Duration." The second, issued on September 14, 2021, has an expiration of "Never." (Doc 87-1 pg 3-4)

3

On January 22, 2025 the trial court entered an order striking Count VIII of the amended complaint which asserted that Gulfport's trespass policy was void for vagueness, and otherwise denying motions to dismiss filed on behalf of Gulfport and O'Reilly. (Doc. 67) On December 4, 2025 the trial court entered an order granting summary judgment to Appellees Gulfport and O'Reilly. (Doc. 122) Lee filed a timely Notice of Appeal on January 5, 2026. (Doc 133)

**Statement of the Facts**

**LEE's Permanent Banishment from City Properties by Gulfport City Manager James O'Reilly**

Lee has been "indefinitely" banned from Gulfport's City Hall[2] since September 4, 2020 and permanently banned from Gulfport's Building Department since September 14, 2021. (Doc 87-1, pg. 3-4) Both trespass warnings were issued at the behest of O'Reilly although O'Reilly was not present and did not witness the conduct by Lee that allegedly justified issuance of permanent bans from city property. (Doc. 82-2, pg 86:9-10) At the time of his deposition O'Reilly indicated that Lee was trespassed from City Hall on September 4, 2020 based upon someone making a call to complain, though he did not recall who. (Doc. 82-2, pg 16-18) O'Reilly testified that he thought the complaint had been that Lee was "pulling on

---

[2] As Gulfport frequently points out, Lee is allowed to attend City Council meetings.

the door or something" at the city building department. (Doc. 82-2, pg19: 2-6) By the time Gulfport's summary judgment was filed the litany of Lee's bad acts that supposedly automatically resulted in him "forfeiting any liberty interest he had in visiting city property" had grown significantly. (Doc. 89)

On July 26, 2022 GULFPORT's then Chief of Police Robert Vincent informed Lee that Lee is banned from the entire City Hall Campus, not just the building department and city hall. (Doc. 87-2 pg 114)

Neither trespass warning indicated the basis for its issuance, or indicates that Lee can appeal either the issuance or duration of his banishment. (Doc 87-1, pg. 3-4)

**Gulfport's Trespass Policy**

The City of Gulfport has a policy whereby:

> *supervisors of individual city facilities are empowered to issue trespass warnings whenever they have reason to believe an individual has caused or is likely to cause a disruption of services or put the safety of staff or the public at risk.* (Doc. 87-2 pg. 45;13-21)

A person who has been issued a trespass warning for city property who subsequently enters that property may be arrested for trespassing. A person need not receive a verbal warning before being issued a trespass warning. (Doc 87-3 pg. 48:3-11) It is not necessary that the city employee issuing the trespass witness the conduct that allegedly justifies permanently banning an individual from city property, as with

the trespass warnings issued to Lee, a citizen can be precluded from ever entering a city property based solely upon hearsay. Doc. 87-2 pg. 45:22-46:6) It is also not necessary that the person permanently trespassed have violated any law or city ordinance before a trespass is issued. (Doc. 87-2 pg. 73:1-9)

According to Gulfport's summary judgement motion, "the City did not have a formal or informal policy on trespass duration, or a formal trespass policy, at the time of Plaintiff's trespass at the Building Department and City Hall on September 4, 2020 and September 14, 2021.[3]" (Doc. 89 pg. 25) However, O'Reilly acknowledged both the continued existence of the trespass policy cited above Gulfport's unconstitutional Trespass Policy does in fact exist, still, (Doc. 87-2 pg. 45:13-20).

Chief of Police Robert Vincent testified that in his 30 year tenure at Gulfport he had never seen a trespass warning other than indefinite or permanent, (Doc. 87-3

---

[3] This claim that there is no trespass policy is curious given Gulfport moved to dismiss Lee's initial complaint because "the City's Trespass Policy does not violate Lee's substantive due process rights," and "that said trespass policy is procedurally sufficient "and that the "terms and language" of the trespass policy "are clear and concise, and legally insufficient" (presumably Gulfport meant "legally sufficient") and "Gulfport's Trespass Policy does not violate either the Substantive or Procedural Due Process Clauses due to vagueness." (Doc.15, ¶ 4-5)

pg. 11:7-15) and that if trespass warnings were not permanent it would a burden for police staff to track them. (Doc. 87-3 pg. 15:3-23)

According to Gulfport's Summary Judgment Motion "[i]t appears the Police Department had a longstanding default policy[4] of "assuming" trespasses issued pursuant to state law were indefinite unless the person who issued it asked for it to be rescinded, which was followed for the sake of administrative convenience." (Doc. 89 pg. 19, fn 15) However, when O'Reilly was asked who controls the duration of a trespass warning he replied "I would." (Doc. 87-2 pg 39:16-20) He also testified that he had never directed that a trespass be issued for a shorter period of time that permanent or indefinite. (Doc. 87-2 pg 40:1-4)

Lee is not alone in having been permanently trespassed from City property without explanation. At least 28 other individuals have been trespassed from Gulfport's casino, library, parks, city hall, marina, and recreation center. If the trespass warnings have any expiration listed, the expiration is noted as "none," "N/A," "never" or "indefinite." )(Doc 98-1)

---

[4] A "long standing default policy" of the City police department would still subject Gulfport to *Monell* liability if unconstitutional. See *Grech v. Clayton Cty.*, 335 F.3d 1326,1329 (11th Cir. 2003) (an unofficial custom or practice shown through the repeated acts of a final policymaker establishes liability) (citations omitted)

At some point Gulfport apparently amended its trespass warning form to indicate "Trespass warning issued for city property may be appealed to the City Manager's Office, 727-893-1009[5]. No such language was included in the trespass warnings issued to Lee, and a right to an appeal is not codified in Gulfport's code of ordinances, nor was Lee ever told of a right of appeal. (Doc. 87-1¶ 5) Further, an appeal of a trespass warning issued in Gulfport, if there ever was one, would be decided not after a *de novo* hearing before a neutral hearing officer but by City Manager O'Reilly, who directed that Lee be issued two trespass warnings in the first place. No one has ever appeal a trespass warning in O'Reilly's lengthy tenure with Gulfport. (Doc. 87-2 pg. 23:13-16)

O'Reilly indicated that he would decide an appeal of a trespass warning based upon "If we're continuing sustaining the behavior that created it." (Doc. 87-2 pg. 23: 8-12) O'Reily made no mention of considering whether there was a valid basis for issuance of the trespass warning in the first place, apparently that is just assumed.

O'Reilly stated that anyone unhappy with his decision could appeal to the city council, (Doc. 87-2 pg. 22:15-23: 7) but that right to appeal is not codified or even in writing. Whether someone whose appeal was denied by O'Reilly would be

_____

[5] This language is included in a Trespass Warning issued by O'Reilly on August 16, 2022. (Doc 98-1 pg 16)

notified of the right to appeal to the city council is speculative as no one has ever appealed.

Notwithstanding the amendment to the trespass warning form to add a single sentence stating that the trespass warning may be appealed to the City Manager's office, Appellee's failed to identify any written criteria or procedures that apply to an appeal from a trespass warning permanently banning an individual from city property.

## STANDARD OF REVIEW

This Court reviews the district court's grant of summary judgment *de novo*, viewing all evidence and drawing all reasonable factual inferences in the nonmoving party's favor. *Simmons v. UPS Inc.*, No. 25-11261, 2026 U.S. App. LEXIS 4805, at *3 (11th Cir. Feb. 18, 2026) citing *McCreight v. AuburnBank*, 117 F.4th 1322, 1329 (11th Cir. 2024). Summary judgment is warranted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

The Court reviews the order granting Gulfport City Manager James O'Reilly summary judgment based upon qualified immunity by resolving issues of material fact in favor of the plaintiff and then answering the legal question of whether the defendant is entitled to qualified immunity under that version of the facts. *Christmas v. Harris County*, 51 F.4th 1348, 1353 (11th Cir. 2022) (citations omitted)

## SUMMARY OF THE ARGUMENT

Gulfport and O'Reilly have defended this case since its inception by asserting that Lee has no right to due process because Lee has "forfeited any liberty interest" he had to enter city property by his obstreperous conduct. (Doc. 15, 29, 47, 88, 89, 92, 93, 100, 101) However, apparently even Appellees concede that at least at one point Lee did have a liberty interest in vising city properties, and the trial court assumed "that Mr. Lee had a liberty interest in accessing the Gulfport City Hall complex, including the Building Department, under the conditions in which these buildings are typically open to members of the public."(Doc. 122 pg. 20).

It is axiomatic that the government cannot deprive an individual of a liberty interest without some form of due process, and undisputed that Lee was provided none. It was apparently lost on Appellees and the trial court that the issue in this case is whether Lee was provided due process, not whether he should have been trespassed in the first place.

The trial court erroneously assumed Lee had no due process right because his constitutionally protected liberty interest no longer existed. Based upon that erroneous belief, the trial court erred in ruling that Lee's rights to due process had not been violated because he had no such rights, which led to the equally erroneous

conclusion that neither Gulfport nor O'Reilly had any liability for violating Lee's constitutional rights. (Doc. 122)

**ARGUMENT**

**I.     Gulfport's Trespass Policy violates the Substantive Due Process Clause**

Gulfport has defended this case from its inception by asserting that Lee's due process claims should be given short shrift because Lee, by his obstreperous conduct, forfeited his liberty interest in visiting city properties. (Doc. 15, 29, 47, 88, 89, 92, 93, 100, 101) Although not identified by O'Reilly when he was asked in his deposition why he twice ordered that Lee be permanently trespassed from city properties, Gulfport's summary judgment motion recounts multiple incidents when Lee used profane language or otherwise behaved poorly, including an incident when Lee in a fit of pique after receiving a response to a public records request on a corrupt CD, tossed the CD into the police department and accidentally struck a police officer's leg. The trial court apparently disbelieved Lee's sworn testimony that he threw the CD in the door because he could not enter the building, and had not intended to strike anyone, as she pointed out that "Nonetheless, Mr. Lee pleaded guilty to the charge." However, the reasons for pleading guilty to a charge rather than risk a trial are myriad, and credibility determinations are improper at the stage of summary judgment. *Wate v. Kubler*,

11

839 F.3d 1012, 1018 (11th Cir. 2016). There is no evidence that either of the trespass warnings had anything to do with the CD tossing, making the entire incident irrelevant to this case.

Among the other "material facts" supposedly supporting Defendants' summary judgment motions are various allegations that LEE called the City Manager's assistant "a fucking lying bitch" or a "fucking liar," called a Gulfport resident a "dyke" and called two Gulfport residents "cunts." (Doc. 88, 89) This conduct, while unjustifiable and distasteful, was not identified as the basis of issuing either of the trespass warning Lee received until recounted as a post hoc rationalization in response to this lawsuit. Such post hoc rationalizations are easily accomplished since the trespass warnings issued pursuant to Gulfport's trespass policy apparently never indicate the basis for their issuance. (Doc. 98-1)

While recognizing that Lee "had a liberty interest in accessing the Gulfport City Hall complex, including the Building Department," the trial court found that Lee "already forfeited any liberty interest he had in accessing the City Hall complex, other than for attending City Council meetings, when he refused to leave the premises as required by the applicable Florida trespass law, Florida Statute § 810.08, after causing the previously described disruptions." (Doc. 122 pg. 30) However, Lee was not trespassing at the time the trespasses were issued. See *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 n.4 (11th Cir. 2011) ("Before receiving a trespass

warning, the warning-recipient is, by definition, not trespassing.") Lee was not cited or arrested for any violation of any state law or city ordinance at the time he was issued either of the trespass warnings.

The trial court cites four cases in its summary judgment order upon which it apparently concludes sanction permanently banning someone from city property under threat of arrest if they return, without prior warning, without identifying the conduct that led to the issuance of the trespass and without providing any meaningful opportunity to appeal. However, if any of the four cases are analyzed on their merits rather than just quoted in sound bites, none of them condone much less allowed a permanent or open-ended trespass warning to be issued banning an individual from municipally owned property.

The first case cited is this Court's decision in *Catron v. City of St. Petersburg*, 658 F.3d 1260 (11th Cir. 2011). This Court acknowledged the existence of a constitutionally protected liberty interest of individuals "to be in parks or on other city lands of their choosing that are open to the public generally," with the caveat that "a person may forfeit this liberty right by trespass or other violation of law." However, this Court did not rule that individuals are not entitled a hearing in which to contest whether they have forfeited their right to be on city properties, and in fact this Court held the exact opposite: "Even if it is impractical for the City to provide a pre-warning hearing to 'assure that there are reasonable grounds to  support' the

trespass warning, the City must provide some post-deprivation procedure to satisfy the requirements of the Due Process Clause." *Id.* at 1268, citing *Gilbert v. Homar*, 520 U.S. 924, (1997).

The second case relied upon by the trial court is *In re Watkins*, No. 23-11718, 2024 U.S. App. LEXIS 6477 (11th Cir. Mar. 19, 2024). Watkins was suspended from a public library for only 30 days, not permanently. Unlike Lee, Watkins had the ability to appeal the trespass warning. ("He has not alleged any facts that indicate the written notice was substantively inadequate or that any delay in receiving written notice prejudiced him in exercising his right to appeal the suspension. Under these circumstances, no procedural-due-process violation occurred.") *Id.* at *12. And unlike Lee, Watkins "did not allege the lack of formal procedure—set out in an ordinance or otherwise—by which a recipient of a trespass warning may challenge the basis of the warning or the terms of the warning violates his rights." *Id.* at *13. That is precisely what Lee has alleged in the instant case. (Doc. 1, Doc. 28).

In the case of *Patrick v. McGuire*, No. 8:24-cv-999-MSS-NHA, 2024 LX 240996 (M.D. Fla. Nov. 15, 2024) the issue before the court was whether Patick had a constitutionally protected right to record video in the tax collector's office. *Id.* at * 23-24. ("Plaintiff's response assumes she had the right to record in the Office and that her removal from the office deprived her of a constitutionally protected right. However, [t]he Office's policy [banning video recording] was a

constitutional and lawful restriction on access to the Office. Plaintiff cannot show that Defendants deprived her of a constitutional right.) (cleaned up)

The trial court also cited the following language from *Sheets v. City of Punta Gorda*, 415 F. Supp. 3d 1115, 1128 (M.D. Fla. 2019):

> *Put simply, neither Sheets nor any other person has an absolute right to visit City Hall. So when the City limits the use of City Hall based on a violation of the Ordinance, it is not violating liberty interests.*

Simply put, Lee has never once asserted that he has an absolute right to use city hall or any other city property. And unlike Sheets, who went to City Hall specifically to test Punta Gorda's ordinance prohibiting video and sound recording without the consent of those being recorded, Lee was not cited for violating an ordinance on either of the occasions he was trespassed nor was he ever told he was being trespassed because he violated an ordinance. In fact, he was not told why he was being trespassed at all. And unlike the permanent trespasses issued to Lee, Sheet was trespassed from city hall for only one year, not forever.

The order cited by the trial court was not a summary judgment order but an order denying Sheets a preliminary injunction against enforcement of the ordinance prohibiting nonconsensual recording. In denying the preliminary injunction, the court emphasized that "ban is limited in time (one year) and geographic scope (City Hall and the Annex)." The court also emphasized that Sheets had not identified "a

single instance in which the City issued open-ended bans from government property." Id. at *1123*. Gulfport trespass warnings are markedly different from the one issued to Sheets in that, like the trespass warnings issued to Lee, the trespass warnings banning individuals from city properties in Gulfport are always either permanent or open-ended.

While Sheets struck out on obtaining a preliminary injunction against Punta Gorda's ordinance prohibiting non-consensual video recording, more recently, Mr. Sheets challenged a trespass warning barring him from returning to a publicly owned Event Center for one year. A motion to dismiss his complaint was denied because Sheets alleged he was not provided an opportunity to appeal that trespass warning, even though it was for only one year. ("According to the complaint, Officer Woelk's decision on the street corner [to issue Sheets the trespass warning] was final, unreviewable, and etched in stone for a full year. Because Sheets alleges the City provided no procedure to contest that decision, he has sufficiently pled that the process was constitutionally inadequate.") *Sheets* v. Woelk, No. 2:25-cv-61-KCD-DNF, 2026 U.S. Dist. LEXIS 25827, at *18 (M.D. Fla. Feb. 9, 2026).

Similarly, Sheets was recently granted summary judgment in his due process challenge to a trespass warning forbidding him from attending a public farmers' market for one year because he was offered no means to appeal the decision. *Sheets v. City of Punta Gorda*, No. 2:24-cv-495-KCD-DNF, 2026 U.S. Dist. LEXIS 10522,

at \*8 (M.D. Fla. Jan. 21, 2026). In holding the year-long ban from the farmers' market was unconstitutional, the judge rejected the very arguments made by the Appellees and accepted by the trial court in the instant case, that Lee was not entitled to due process because his conduct was so egregious he "forfeited his liberty interest in being on city property." In granting summary judgment on Sheets' Fourteenth Amendment claim, the court held:

> *The Due Process Clause does not protect only innocent people—it protects everyone who is deprived of a liberty interest. Whether Sheets was banned for filming, for causing a disturbance, or for wearing a loud shirt is a question of fact. And the entire point of procedural due process is to provide a forum where such facts can be disputed. The City essentially argues that because it had a good reason to ban Sheets, it did not need to provide him a hearing. That logic works backward. The purpose of the hearing is to determine if the City had a good reason. To say that the validity of the trespass excuses the lack of process would leave the Due Process Clause a nullity.*

None of the cases cited in the challenged summary judgment order have upheld a permanent or indefinite ban from publicly owned properties without an opportunity to challenge issuance of the ban. In fact, trespass warnings precluding individuals from accessing public properties for only a year have been routinely held unconstitutional if the recipient has no right of appeal. The conclusion that Lee was not entitled to a hearing to determine if he forfeited his right to visit city properties

is much like concluding an accused individual is not entitled to a trial because s/he is guilty.

**A. Issuing individuals trespass warnings banning them from city properties permanently in the absence of conduct violating any ordinance or law, without notice of the basis of the trespass warning or a right to appeal based solely upon hearsay is "conscience shocking"**

The summary judgment order challenged herein states "Defendants' actions in issuing trespass warnings indefinitely banning Mr. Lee from accessing the City Hall campus due to his failure to leave the premises when directed do not amount to conscience-shocking conduct." Assuming arguendo that is even the correct standard, a policy that allows a city employee to permanently ban citizens who have not broken the law or violated an ordinance from municipally owned properties, without explanation of the basis for decision to issue the ban or a meaningful ability to appeal the ban smacks of despotism. The permanent deprivation of a protected liberty interest with no meaningful right to appeal is constitutionally arbitrary and certainly should shock the conscience, regardless of why the ban was imposed.

The trial court's conclusion that permanently banning Lee from two city properties is not conscience shocking is apparently based in part on Mr. O'Reilly's testimony that "at the time, Gulfport had a policy of "'indefinitely' trespassing individuals," but that the individual could appeal the issuance, duration, or scope of a trespass warning to him as City Manager." This right to appeal is ephemeral at best

and even if it existed when Lee was trespassed it is totally inadequate. The record below contains emails from Gulfport employees sent in May and July of 2019 expressing concerns about the constitutionality of trespassing individuals from city property without due process. (Doc. 87-2 pg. 111-114) The Appellees touted this right of appeal that now exists, apparently invented sometime after July of 2019 albeit without formal adoption, written criteria or written procedures, but failed to identify anything in writing providing for such an appeal save one sentence more recently added to the bottom of trespass warnings stating "Trespass warning issued for city property may be appealed to the City Manager's Office," and providing a phone number.

At the time Lee was issued the trespass warnings, a trespassed individual would need psychic powers to know of this supposed right to appeal. Nothing in writing, much less something codified, publicly available and routinely given to trespass recipients provided for this supposed ability to appeal the issuance, duration, or scope of a trespass warning. And even if an individual that has been trespassed caught wind of this supposed right to appeal, there any no criteria that apply to such an appeal, nor are there any procedural rules regarding how such an appeal would proceed. This hypothetical and undefined right of appeal does not satisfy due process constraints. See *Sheets v. City of Punta Gorda*, No. 2:24-cv-495-KCD-DNF, 2026 U.S. Dist. LEXIS 10522, at *8 (M.D. Fla. Jan. 21, 2026)

19

*The Constitution places the burden on the government to provide a clear path for relief. The City cannot fail to establish an appeals process and then penalize Sheets for failing to find it. According to Sheets, City officials denied the existence of any procedure to challenge the trespass warning. And the City has offered no mechanism here—no form to file, no official to petition, and no hearing to request. Contrary to the City's suggestion, a federal civil rights lawsuit is not the process the Constitution contemplates for a simple trespass warning. Litigation is the remedy for a constitutional violation, not the procedure that prevents it. The failure here lies not in Sheets's lack of effort, but in the City's apparent lack of a door for him to knock on.*

When questioned regarding how he would conduct an appeal of a trespass warning O'Reilly testified that if Lee desired to have the trespass warnings terminated O'Reilly stated that he "would meet with him and have a conversation—discussion with them. I'd inquire of the Police department if there was any additional complaints filed on Lee or other city staff," (Doc. 87 pg. 22: 3-7) and then the appeal would be decided based upon "If we're not continuing sustaining the behaviors that have created" the trespass warning. (Doc. 87 pg. 22: 3-7) Notably O'Reilly made no mention of the city being required to demonstrate that there was a valid basis for issuing the trespass warning in the first place, and could not say how long a trespass warning recipient would have to go without an additional complaint having been made before a ban from city property would be rescinded. *Id.* Apparently the veracity of any complaint made regarding a trespass recipient would just be assumed.

Furthermore, apparently trespassed individuals have the burden of convincing O'Reilly they have rehabilitated themselves sufficiently such that he, in his unbridled discretion, should allow them to regain access to whatever city property they have been banned from.

Even if Lee had been notified of an opportunity to appeal the trespass warnings, the ability to request an informal chat with the very same person that issued the trespass warning so that the very same person can decide whether to rescind it based upon whether the police department received any hearsay complaints about that individual for some unspecified amount of time does not render the trespass warnings issued to Lee any less conscience shocking. O'Reilly asserted that Lee threatened to hit him. When asked whether, given that allegation, he is the most objective person to determine whether Lee's trespass warnings should be terminated he replied "I—that's a--that's a process." (Doc. 87-2 pg 21:5-11)

A basic element of due process is the right to be heard by a neutral fact finder. See *Valley v. Sec'y, Fla. Dep't of Corr*., No. 16-17669-J, 2018 U.S. App. LEXIS 29307, at *11 (11th Cir. Oct. 17, 2018) (Even in non-trial hearings, a neutral fact finder is an indispensable aspect of due process.) citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973). The supposed availability of an appeal to the same person that issued the trespass warnings does not protect an adversely impacted individual's due process rights, even s/he is notified of such a right. Furthermore, the burden of proof

should be on Gulfport to show there was a valid basis for issuing a trespass warning. See, *Wright v. City of St. Petersburg*, 833 F.3d 1291 (11th Cir. 2016). Although Wright's suit was based upon the First Amendment and not due process, this Court also noted that the St Petersburg ordinance provides a process for trespass warning recipients to appeal the warnings they receive to an independent hearing master, and then, if necessary, to seek review in the county circuit court, which as the Court also noted, "has jurisdiction over appeals from final administrative orders of local government code enforcement boards." *Id.* at 1293. A *de novo* hearing before a neutral hearing officer at which the city proves it had a legitimate basis to deprive an individual right to be present on private property is a far cry from the hypothetical appeal supposedly offered in Gulfport. Accordingly, it is not surprising that no one has ever appealed a trespass warning banning them from Gulfport property. (Doc. 87-2 pg. 23:13-16.)

The trial courts final words in denying Lee's as applied substantive due process claims were that "[a]lthough it would have been better if the written trespass warnings explicitly stated the reasons for which the warnings were issued or the method by which Mr. Lee could appeal the warnings, this omission does not render the trespass warnings egregious." (Doc. 122 pg. 27)

The issue is whether the trespass warning we constitutional. The trespass warnings not only failed to explicitly state the method by which Lee could appeal,

they failed to advise him of any right to appeal at all. A trespass warning with the same shortcomings was in large part the basis for summary judgment in favor if a trespass warning recipient's due process claim in *Sheets v. City of Punta Gorda*, No. 2:24-cv-495-KCD-DNF, 2026 U.S. Dist. LEXIS 10522, at *14 (M.D. Fla. Jan. 21, 2026). ("The document handed to Sheets commands him not to return or face arrest, yet it provides no instructions on how to contest that command—no number to call, no form to file, and no deadline to meet.")

Second, informing an individual of the basis upon which a decision permanently excluding an individual from city property was made is not just a procedural nicety. The essential elements of due process are proper notice and an opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). In *Cyr v. Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536 (D. Vt. 2014), plaintiff, the father of an autistic student, sued alleging a due process violation based upon the School District's issuance of two notices of trespass prohibiting him from entering onto its property. In ruling that the trespass notices violated Mr. Cyr's due process rights, the Court emphasized not only the lack of a process to appeal the ban for school property, but also the fact that, like the two trespass warnings received by LEE, "[n]either notice contained any explanation of the basis upon which it was issued." *Id.* at 552, citing *Taylor v. Rodriguez*, 238 F.3d 188, 193 (2d Cir. 2001) (notice must contain "specific facts underlying the allegation[s]" that led to the

government's actions "because a hearing is not 'meaningful' if a [party] is given inadequate information about the basis of the charges against him."), accord *Bates v. Town of Cavendish*, 735 F. Supp. 3d 479, 503 (D. Vt. 2024) (complaint states a claim for due process violation when trespass notice prohibiting entering town property does not provide the reasons for its issuance or a method of appeal)

**B. Gulfport's Trespass Policy is facially unconstitutional**

Substantive due process is an outer limit on the legitimacy of governmental action, which protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense. According to this Court "a successful substantive due process claim requires showing: (1) the plaintiff had a valid property interest, and (2) the defendant infringed on that interest in a constitutionally arbitrary or conscience-shocking manner." *Neely v. Elmore Cty.*, No. 24-11112, 2025 U.S. App. LEXIS 6965, at *4 (11th Cir. Mar. 26, 2025) citing *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003).

The trial court however made short shrift of Lee's facial challenge to Gulfport's Trespass Policy on substantive due process grounds. According to the trial court, Lee's challenge is "meritless" because the government "has a legitimate interest in limiting the use of its property to its intended purpose" and the Trespass Policy is "sufficiently related to the legitimate governmental interests of public safety and limiting the use of its property to its intended purpose."

Lee does not dispute that Gulfport can limit the use of its municipal properties to their intended purposes or that Gulfport may take actions and impose policies that protect public safety. Banning an individual from city property for a year with notice and a right to appeal would be sufficiently rrelated to legitimate government objectives. The challenged Trespass Policy goes much farther than that. A policy that allows city employees to decide to permanently ban individuals that have not violated any law or ordinance from returning to city property, under threat of arrest, without providing any explanation of basis of the decision or any meaningful right of appeal bears no rational relationship to the objectives of controlling the use of city property or protecting public safety. Despotically banning individuals from city property forever without due process is an abuse of power not justified by the objectives of managing city properties or protecting public safety.

Numerous cases have held that <u>timed limited</u> trespasses from public property do not violate substantive due process. *See for example Zomerfeld v. Kingston Twp. Police*, No. 3:22-cv-00237, 2023 U.S. Dist. LEXIS 21981, at \*22 (M.D. Pa. Feb. 9, 2023) (Here, in response to a threat against township employees and their children, Zomerfeld was *temporarily* barred for a period of months from entering onto the premises of the township's municipal building, public works facility, and a municipal park, followed by a second period of months during which his access to these properties was restricted to visits with advance notice and a police escort.) (emphasis

in the original) However, except for bans of individuals with an extensive history of sexually abusing children from entering parks, *see for example Doe v. City of Lafayette*, 377 F.3d 757, 772-73 (7th Cir. 2004), and *Brown v. City of Mich. City*, 462 F.3d 720 (7th Cir. 2006), one of the few accusations Appellees have yet to hurl at Lee, there is no authority for permanently banning individuals from city property, particularly without a right of appeal. Appellees conduct in doing so is constitutionally arbitrary and certainly should be conscience-shocking.

## II. City Manager James O'Reilly is not entitled to Qualified Immunity

The summary judgment order found that Mr. O'Reilly is entitled to qualified immunity because there was no constitutional violation. (Doc. 122 at 29.) Accordingly, the trial court did not make any determination regarding whether O'Reilly violated a clearly established right.

To receive qualified immunity, an official must first prove that he was acting within the scope of his discretionary authority when the allegedly unlawful conduct took place. The burden then shifts to the plaintiff to demonstrate that the official violated a clearly established constitutional right. *Ammon Ra Sumrall v. Wilcox*, 154 F.4th 1304, 1310-11 (11th Cir. 2025) (citations omitted), *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (Qualified immunity shields a government official from liability unless the plaintiff shows (1) the official violated a

constitutional right and (2) the right was clearly established at the time of the challenged conduct. )(citations omitted)

Lee does not dispute that O'Reilly was acting in his discretionary authority when he issued both trespass warnings. This Court should find that O'Reilly violated clearly established law when he caused two trespass warnings, one of permanent duration and one of indefinite duration, to be issued to Lee subjecting Lee to future arrest if he returned to city property, without informing him of the basis for their issuance or affording him a meaningful pre or post deprivation hearing.

The right to access to public places was well-established by *City of Chicago v. Morales*, 527 U.S. 41 (1999), which held that "the freedom to loiter for innocent purposes [in a public place] is part of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment," and that "an individual's decision to remain in a public place of his choice" is a part of his liberty. *Id.* Relying in part on *City of Chicago*, almost 15 years ago in *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011) this Court found an ordinance allowing city employees to issue trespass warnings without an explicit right to appeal was unconstitutional. This ruling was made even though the trespass warnings issued in St. Peterburg were of limited duration (up to one year for first offenders and up to two years for all other violations), and even though the trespass warning form used by city employees at

least hinted of the possibility of the trespass being rescinded.[6] In comparison, one of the trespass warnings O'REILLY caused to be issued to LEE was "permanent" and the other was for an "indefinite duration" and neither made mention of a procedure to challenge the trespass warnings.

O'REILLY asserted in opposition to Lee's summary judgment motion that:

"Because the Plaintiff has not, and cannot, point to any "clearly established right" for him to be present in such nonpublic fora, at any time he wishes and with the prerogative to do that which he wishes to do, to include often profane verbal and physical assaults (as discussed in more detail below), Mr. O'Reilly is entitled to qualified immunity." (Doc. 93 pg. 4)

Lee has never asserted a right to be present on city-owned property "at any time he wishes and with the prerogative to do that which he wishes to do, to include profane verbal and physical assaults." To the contrary, Lee would like to visit City Hall and the Building Department for innocent purposes under ordinary conditions that apply to other members of the public.  (Doc. 87-1 ¶ 7) There is clear precedent for finding that an individual's right to remain in a public place has

---

[6] The trespass warning form stated: "You are hereby notified that your presence is no longer welcome . . . on the [municipal] property/premises described below, unless such prohibition is rescinded in writing by the City official having control over the premises." *Catron* at ft note 2.

been clearly established for purposes of qualified immunity. *Catron v. City of St. Petersburg*, at 1266. (11th Cir. 2011) (Plaintiffs have a constitutionally protected liberty interest to be in parks or on other city lands of their choosing that are open to the public generally.), *citing City of Chicago v. Morales*, 527 U.S. 41, (1999), accord *Kennedy v. City of Cincinnati*, 595 F.3d 327, 336 (6th Cir. 2010) ("Assuming that Kennedy's version of the facts are true, defendants have barred Kennedy from entering any property deemed a part of the City of Cincinnati's recreational  system . . . thus, it is clear that Kennedy had a liberty interest 'to remain in a public place of his choice' and that defendants interfered with this interest.")

O'Reilly even testified that he was aware of concerns of Gulfport police department employees regarding the constitutionality of trespassing individuals from publicly owned properties and sought clarification from the city attorney. O'Reilly claimed that the city attorney blessed continuing to trespass individuals from city properties pursuant to the status quo "because the case law related to St. Petersburg was not applicable in our situations to where we were trespassing individuals" but could not explain why it was inapplicable, stating "You'd have to ask the city attorney." (Doc. 87-2 pg. 57:9-59:1)  However, when the City Attorney was asked if he had ever researched the constitutionality of the Gulfport trespass policy challenged in the instant litigation, he answered in the negative and testified

he had never been asked to evaluate the policy, or to evaluate whether a person can be trespassed without right of appeal or to evaluate the constitutionality of permanently banning individuals from city property. (Doc. 116-2 pg. 12:22-14:1)

This Court should determine that O'Reilly is not shielded from liability for his action based upon qualified immunity.

### III.     Gulfport is liable for its unconstitutional Trespass Policy

Because the trial court erroneously ruled that Gulfport's trespass policy is not unconstitutional, it also improperly absolved Gulfport of any liability under §1983. (Doc. 122 pg. 30)  While Gulfport's Motion for Summary Judgment denied that Gulfport had "a formal or informal policy on trespass duration, or a formal trespass policy, at the time of Plaintiff's trespass at the Building Department and City Hall on September 4, 2020 and September 14, 2021," this wholly disingenuous assertion was contradicted by its own arguments in support of its motions to dismiss, as well as the sworn deposition testimony of O'Reilly and GULFPORT's former Chief of Police confirming the existence of the trespass policy allowing supervisors of city facilities to issue a trespass warning permanently banning an individual from returning to the facility under threat of arrest whenever the supervisor feels the individual "has caused or is likely to cause a disruption of public services or put the safety of staff or the public at risk" (Doc.  87-2, 5:13-20) (Doc. 87-311: 21-12:15).

Similarly, O'Reilly and Gulfport's former Chief of Police verified that in Gulfport, trespass warnings are forever. O'Reilly testified in his deposition that he controls the duration of a trespass and has never issued a trespass for a shorter duration than "permanent or indefinite." (Doc. 87-2 pg. 39:16-41:13) Similarly, GULFPORT's former Police Chief testified that he had "never in 30 years with the police department," seen a trespass warning for a duration other than indefinite or permanent:

> *That's what I was taught when I first started, that it was, the trespass warning, once you issued it, was always in effect, unless the person who issued it, asked for it to be rescinded, and that's been the practice forever, as far as I knew.*
> (Doc. 87-2 pg. 11:7-15

Gulfport's unconstitutional Trespass Policy does in fact exist, unchanged from when the trespasses were initiated or this suit was initiated, (Doc. 87-2 pg. 45:13-20) as an official promulgated policy of the city, which in these circumstance subjects Gulfport to liability under *Monell*. *See Baxter v. Roberts*, 54 F.4th 1241, 1270 (11th Cir. 2022) (Ultimately, the plaintiff must show that the municipality's "policies [were] the moving force behind the constitutional violation.)

*Monell* liability can also be established by identifying a municipal official with final policymaking authority whose decision violated the plaintiff's constitutional rights. *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty., Fla.*,

48 F.4th 1222, 1229 (11th Cir. 2022), or if "final policymakers have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure." *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016). O'Reilly owned his decisions to trespass Lee from city property, in one case permanently and in one case indefinitely. (Doc. 87-2 pg. 33:6-25) O'Reilly is a final policy maker; he testified that he decides the duration of a trespass (Doc. 87-2 pg. 40:1-4) and is uniquely and individually empowered to rescind a trespass.

### IV. Gulfport's Trespass Policy violates the Procedural Due Process Clause

The trial court also summarily concluded that Lee was not entitled to procedural due process "because he already forfeited any liberty interest he had in accessing the City Hall complex" apparently misunderstanding that Lee was entitled to due process to determine whether he had forfeited "any liberty interest he had" in accessing city property. *Sheets v. City of Punta Gorda*, No. 2:24-cv-495-KCD-DNF, 2026 U.S. Dist. LEXIS 10522, at *12 (M.D. Fla. Jan. 21, 2026) ("The purpose of a hearing is to determine whether Sheets actually committed the conduct that would justify the forfeiture of his rights. To say he has no right to a hearing because he is already guilty is to wipe the Due Process Clause off the books.")

That a municipality may trespass individuals who by their conduct have forfeited their liberty interest in visiting city property does not mean that it may do so whenever it chooses for whatever reasons it chooses, without affording due process. *Catron*, 658 F.3d at 1268. (Even if it is impractical for the City to provide a pre-warning hearing to assure that there are reasonable grounds to support the trespass warning, the City must provide some post-deprivation procedure to satisfy the requirements of the Due Process Clause.)

The cases cited by the trial court for the proposition that Lee "forfeited any liberty interest he had" in visiting city properties are the exact same ones cited by the court in granting summary judgment to Gulfport on Lee's substantive due process claims. As previously explained, those cases do not say what the trial court thinks they say. Even if Lee had been given notice and a hearing, there is no authority for a permanent ban from municipally owned properties open to the public.

The trial court identified the three elements that must be proved to establish a procedural due process claim: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process, citing *Catron*, 658 F.3d at 1268. However, the court did not analyze whether the elements had been proven because of the erroneous conclusion that Lee failed on the first element because he forfeited his constitutionally protected liberty

interest "when he caused disruptions and refused to leave the premises as required by the applicable Florida trespass law, Florida Statute § 810.08." The trial court is guilty of the same flawed logic as the City of Punta Gorda: "[T]he City's argument puts the cart before the horse. It contends that Sheets forfeited his liberty interest the moment he allegedly caused a disturbance. But until Officer Lipker handed him the citation, Sheets was not a trespasser in the eyes of the law; he was a citizen standing on a public street." *Sheets v. City of Punta Gorda*, No. 2:24-cv-495-KCD-DNF, 2026 U.S. Dist. LEXIS 10522, at *12 (M.D. Fla. Jan. 21, 2026)

Indisputably Lee has a protected liberty interest in lawfully visiting city property open to the public. *Catron*, 658 F.3d at 1267. Appellees have not even attempted to argue that the O'Reilly as City Manager directing Gulfport police officers to issue trespass warnings permanently banning citizens from city-owned property does not constitute state action. As to the third element, except for the fact that trespass warnings in Gulfport are permanent or open ended as opposed to limited to one year, or two for a repeat offender, Gulfport's Trespass Policy is virtually indistinguishable from the ordinance held to pose a "substantial risk of erroneous deprivation of liberty" in *Catron*, 658 F.3d 1267-8, "because the trespass ordinance provides no procedural means for a warning-recipient to challenge the warning." While providing a due process hearing to individuals that have received trespass warnings would impose some expense upon Gulfport, Gulfport's interest in

controlling city properties is not significantly burdened by requiring that individuals trespassed from city property be provided a meaningful opportunity for review. If a person banned from city owned properties for a year or two is entitled to an appeal surely such an opportunity must be provided to an individual served with a trespass warning that is permanent or of infinite duration. The trial court erred in granting summary judgment to the Appellees on Lee's due process claims.

Gulfport asserted that in its reply to Lee's summary judgment motion (Doc. 92 pg. 4) that:

> Not only did Plaintiff forfeit any limited liberty interest he may have had in accessing City Hall without restrictions, but the City had a perfectly sensible basis for excluding Plaintiff from City Hall due to his repeatedly demonstrated hostile tendency to verbally disrupt and disrespect Gulfport's City Hall's workplace environment, as such behaviors are utterly inconsistent with the purpose of the nonpublic forum involved.

Maybe the city did have a "perfectly sensibly basis" for excluding Lee from City Hall, maybe it did not. But without due process there is no way to tell whether Lee "forfeited whatever liberty interest he may have had." *See Sering Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 157 (W.D.N.Y. 2025) (Procedure is not mere puffery, a gesture that is irrelevant so long as the result is correct. The Constitution safeguards not just substantive rights under the law but due process as well. U.S. Const. amends. V, XIV. That process is at the core of what our Constitution

guarantees.), see also *Sheets v. City of Punta Gorda*, No. 2:24-cv-495-KCD-DNF, 2026 U.S. Dist. LEXIS 10522, at *8 (M.D. Fla. Jan. 21, 2026) (The City essentially argues that because it had a good reason to ban Sheets, it did not need to provide him a hearing. That logic works backward. The purpose of the hearing is to determine if the City had a good reason.) As Lee has repeatedly try to convince Appellees, the instant lawsuit is about whether Lee was provided adequate process, not whether there was a "perfectly sensible basis" for the issuance of trespass warnings.

## CONCLUSION

For the foregoing reasons, this Honorable Court should reverse the District Court granting summary judgment to Gulfport and James O'Reilly.

MARCY I. LAHART, P.A.
861 S. 40th Street
Tacoma, WA 98418
Phone (352) 545-7001
Facsimile (888) 400-1464
marcy@floridaanimallawyer.com

BY: s/ *Marcy LaHart*
MARCY I. LAHART ESQ.
Florida Bar No. 0967009

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8316 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionately spaced typeface using Microsoft Word in 14 point in Times New Roman font.

*s/ Marcy LaHart, Esq.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2026, an electronic copy of the foregoing document was filed with the Clerk of Court for the United States Court of Appeals for the Eleventh Circuit using the Court's CM/ECF system and service was affected electronically on counsel of record.

*s/ Marcy LaHart, Esq.*