IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

CASE NO.: 26-10044
DISTRICT COURT DOCKET NO.: 8:23-CV-02996-VMC-AEP

JESSE LEE
Appellant,

v.

CITY OF GULFPORT and JAMES O'REILLY
Appellees.

## Answer Brief on Behalf of Appellee, City of Gulfport

DONOVAN A. ROPER, ESQ.
Florida Bar No.: 858544
IAN P. DEPAGNIER, ESQ.
Florida Bar No.: 0116385
R. DUSTYN RING, ESQ.
Florida Bar No.: 1049924
ROPER & ROPER, P.A.
116 North Park Avenue
Apopka, FL 32703
Tel: 407-884-9944
Fax: 407-884-4343
Counsel for Appellees

DATED: May 8, 2026

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Appellee, CITY OF GULFPORT, certifies that the following persons have an interest in the outcome of this appeal:

City of Gulfport (Appellee)

Covington, Hon. Virginia M. Hernandez (U.S. District Judge)

Depagnier, Ian P., Esq. (Counsel for Appellees)

Marcy I. LaHart, P.A. (Law Firm for Appellant)

LaHart, Marcy Esq. (Counsel for Appellant)

Lee, Jesse (Appellant)

O'Reilly, James (Appellee)

Porcelli, Hon. Anthony E. (U.S. Magistrate Judge)

Ring, R. Dustyn, Esq. (Counsel for Appellees)

Roper, Donovan A., Esq. (Counsel for Appellees)

Roper & Roper, P.A. (Law Firm for Appellees)

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1 through 26.1-3, the undersigned certifies that no publicly held company has an interest in the outcome of this appeal.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

The undersigned would submit that oral argument may not be necessary in this case because it believes that "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process [may] not be significantly aided by oral argument." Fed. R. App. P. 34(a)(2)(C).

# STATEMENT OF JURISDICTION

On December 5, 2025, the District Court entered Final Judgment in favor of the Defendants. [Doc. 129]. Because this is an appeal from a final decision of the District Court, this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS........................ C-1

CORPORATE DISCLOSURE STATEMENT........................ C-2

STATEMENT REGARDING ORAL ARGUMENT.................... C-3

STATEMENT OF JURISDICTION.................................... C-4

TABLE OF CONTENTS.............................................. i

TABLE OF AUTHORITIES.......................................... iii

PRELIMINARY STATEMENT........................................ 1

STATEMENT REGARDING ADOPTION OF BRIEFS OF OTHER PARTIES................................................... 1

INTRODUCTION..................................................... 2

STATEMENT OF THE ISSUES...................................... 2

STATEMENT OF THE CASE......................................... 3

STATEMENT OF THE FACTS....................................... 3

NO FORMAL TRESPASS POLICY.................................. 11

COURSE OF PROCEEDINGS........................................ 15

STANDARD OF REVIEW............................................. 21

SUMMARY OF ARGUMENT........................................ 22

ARGUMENT.......................................................... 24

    I.    THE SUMMARY JUDGMENT AS TO COUNTS VI     24

AND VII SHOULD BE AFFIRMED BECAUSE LEE HAS
NO LIBERTY INTEREST IN ACCESSING CITY HALL DURING BUSINESS HOURS, BUT ALTERNATIVELY EVEN IF HE DOES, HE FORFEITED IT AS THE DISTRICT COURT FOUND...................................

A. LEE HAS NO LIBERTY INTEREST IN ACCESSING CITY HALL DURING BUSINESS HOURS....................................................... 24

B. IN THE ALTERNATIVE, IF LEE HAD A LIBERTY INTERST, HE FORFEITED IT............................ 34

II. SUMMARY JUDGMENT SHOULD BE AFFIRMED ON COUNTS III AND IV BECAUSE APPELLANT FORFEITED HIS LIBERTY INTEREST, BUT REGARDLESS, APPELLANT'S CLAIMS FAIL UNDER EITHER SUBSTANTIVE DUE PROCESS ANALYSIS. 45

A. THE CITY'S ACTIONS ARE NOT "CONSCIENCE SHOCKING" WHEN VIEWED AS EXECUTIVE ACTION.................................................... 46

B. THE CITY'S INFORMAL TRESPASS POLICY, IF ANALZYED AS LEGISLATIVE ACTION, SURVIVES RATIONAL BASIS SCRUTINY............ 50

III. LEE CANNOT DEMONSTRATE THE EXISTENCE OF A MONELL CUSTOM OR POLICY THAT WAS THE "MOVING FORCE" BEHIND ANY ALLEGED CONSTITUTIONAL VIOLATION............................ 55

CONCLUSION.................................................................. 60

CERTIFICATE OF COMPLIANCE....................................... 62

CERTIFICATE OF SERVICE............................................. 63

# TABLE OF CITATIONS

**Cases**

*625 Fusion, LLC v City of Fort Lauderdale*, 526 F.Supp.3d 1253, 1271-72 (S.D. Fla. 2021) ...................................................... 47

*Adderley v. Florida*, 385 U.S. 39, 47 (1966), *reh'g denied*, 385 U.S. 1020 (1967) .............................................................. 25, 28, 45

*Ajomale v. Quicken Loans, Inc.*, No. 1:17-CV-539-JB-MU, 2020 WL 13553740, at \*2 (S.D. Ala. July 7, 2020)................................... 50

*Arrington v. Helms*, 438 F.3d 1336, 1347–48 (11th Cir. 2006)....... 25

*Atl. Specialty Ins. Co. A.S. v. Digit Dirt Worx, Inc.*, 793 F. App'x 896, 901 (11th Cir. 2019) ............................................................ 50

*Baker v. Moskau*, 335 F. App'x 864, 868 (11th Cir. 2009) ............. 22

*Bannum, Inc. v. City of Fort Lauderdale, Fla.*, 157 F.3d 819, 822 (11th Cir. 1998) ....................................................... 20, 51, 52

*Banuelos v. Martinez*, No. 1:15-cv-00010-AWI-GSA, 2015 WL 3660261, at \*3 (E.D. Cal. June 11, 2015) ................................. 28

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404–07 (1997)................................................................. 55

*Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) .............. 59

*Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011)............................................................... 35, 42, 44

*Church v. City of Huntsville,* 30 F.3d 1332, 1345 (11th Cir. 1994). 35

*Claudio v. United States,* 836 F. Supp. 1219 (E.D.N.C. 1993) ........ 32

*Coley-Pearson v. Martin,* 689 F. Supp. 3d 1339, 1350 (S.D. Ga. 2023), *aff'd on other grounds,* 156 F.4th 1133 (11th Cir. 2025) . 29, 30, 31

*Cornelius v. NAACP Legal Defense and Educ. Fund Inc.,* 473 U.S. 788, 799–800 (1985) ..................................................... 25, 27, 32

*County of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998) ............. 47

*Cuellar v. Bernard,* No. SA-13-CV-91-XR, 2013 WL 1290215, at *3 (W.D. Tex. Mar. 27, 2013) ..................................................... 36

*Davis v. Carter,* 555 F.3d 979, 982 (11th Cir. 2009) .................... 48

*Depew v. City of St. Marys,* 787 F.2d 1496, 1499 (11th Cir. 1986) 58

*Downer v. State,* 375 So. 2d 840 (Fla. 1979) ................................ 45

*Freedom Foundation v. Sacks,* No. 3:19-CV-05937-BJR, 2021 WL 1250526, at *7 (W.D. Wash. Apr. 5, 2021), *aff'd sub nom.* No. 21-35342, 2022 WL 671017 (9th Cir. Mar. 7, 2022) ...................... 29

*Grossbaum v. Indianapolis-Marion Cnty. Bldg. Auth.,* 63 F.3d 581, 583 (7th Cir. 1995) ........................................................... 32

*Gurrera v. Palm Beach Cnty. Sheriff's Off.,* 657 F. App'x 886, 892-93 (11th Cir. 2016) ............................................................... 58

*Helms v. Zubaty* illustrates this point well. 495 F.3d 252, 257 (6th Cir. 2007) ....................................................................... 28

*Hoefling v. City of Miami,* 811 F.3d 1271, 1282 (11th Cir. 2016) ... 47

*In re Egidi,* 571 F.3d 1156, 1163 (11th Cir. 2009)......................... 41

*In re Watkins,* No. 23-11718, 2024 WL 1174182 (11th Cir. 2024) 42, 43, 44

*Kentner v. City of Sanibel,* 750 F.3d 1274, 1281 (11th Cir. 2014).. 51

*Lavite v. Dunstan,* 932 F.3d 1020, 1029 (7th Cir. 2019)................ 29

*Littlejohn v. Sch. Bd. of Leon Cnty., Fla.,* 132 F.4th, 1232, 1239 (11th Cir. 2025) ..................................................................... 51

*Lucas v. W.W. Grainger, Inc.,* 257 F.3d 1249, 1255 (11th Cir. 2001) ...................................................................................................... 21

*Maddox v. Stephens,* 727 F.3d 1109, 1118 (11th Cir.  2013 ......... 46

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986)....................................................................... 22

*McDonough v. Garcia* ................................................................ 26

*McDowell v. Brown,* 392 F.3d 1283, 1290 (11th Cir. 2004) ..... 56, 59

*McKinney v. Pate,* 20 F.3d 1550, 1562 (11th Cir. 1994) .......... 41, 46

*Mettler v. Whitledge,* 165 F.3d 1197, 1205 (8th Cir. 1999) ............ 58

*Monell v. Dep't of Social Servs.,* 436 U.S. 658 (1978) .. 55, 57, 58, 59, 60

*Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373 (11th Cir. 2002).... 48

*O'Brien v. Welty*, 818 F.3d 920, 931-32 (9th Cir. 2016) ................ 29

*Occupy Fort Myers v. City of Fort Myers*, 882 F.Supp.2d 1320, 1338-39 (M.D. Fla. 2011)........................................................................ 35

*Patrick v. McGuire*.................................................................... 42

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983) ............................................................................ 25, 26, 29

*Peterson v. Baker*, 504 F.3d 1331, 1336 (11th Cir. 2007)............. 48

*Sefick v. Gardner*, 990 F.Supp. 587, 593 (N.D. Ill. 1998).............. 32

*Sheets v. Punta Gorda*, 415 F.Supp.3d 1115, 1120 (M.D. Fla. 2019) ........................................................35, 36, 38, 39, 40, 41, 43

*Small v. Astrue*, Civil No. 08–cv–01864–LTB–KLM, 2009 WL 2134345, at *8 (D. Colo. July 14, 2009)................................... 28

*U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129-30 (1981) ................................................................ 52

*United States v. Kokinda*, 497 U.S. 720, 726 (1990)..................... 25

*Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003) ................................................................... 47, 48

*Watkins v. Broward Sheriff Office*, 824 Fed. Appx. 865, 868 (11th Cir. 2020) ............................................................................ 45

*Whitaker v. Miami-Dade Cnty.*, 126 F. Supp. 3d 1313, 1321 (S.D. Fla. 2015) ................................................................ 57, 58

*Williams v. Town of Greenburgh*, 535 F.3d 71, 75 (2d Cir. 2008) .. 27, 34, 36, 39, 40

*Zinernon v. Burch*, 494 U.S. 113, 126 (1990) ................................ 41

**Statutes**

§ 810.08, Fla. Stat. ................................................................. 21

§ 810.08(1), Fla. Stat. ............................................................. 11

§ 810.08-09, Fla. Stat. ............................................................ 14

§ 810.09(1)(a), Fla. Stat. ......................................................... 11

§ 810.09(2)(a), Fla. Stat. ......................................................... 37

§ 810.09(2)(b), Fla. Stat. ......................................................... 44

§ 810.09(a)(1), Fla. Stat. ......................................................... 43

42 U.S.C. § 1983 ................................. 2, 16, 21, 25, 35, 38, 46, 55

**Rules**

Fed. R. Civ. P. 56(a) ............................................................... 22

## PRELIMINARY STATEMENT

Appellant Jesse Lee was the Plaintiff in the District Court and will be referred to as "Lee," or "Appellant."

Appellees City of Gulfport, Florida, and James O'Reilly were the Defendants in the District Court and will be referred to as "the City" or "Gulfport" and "Mr. O'Reilly" respectively.

The City and Mr. O'Reilly will sometimes be referred to collectively as "the Defendants."

References to the record on appeal will be by District Court Docket Entry number and page number: [Doc. # at ___].

References to Lee's Principal Brief filed March 2, 2026 will be as follows: [Lee's Brief, p. #].

## STATEMENT REGARDING ADOPTION OF BRIEFS OF OTHER PARTIES

The City of Gulfport adopts and incorporates by reference Mr. O'Reilly's arguments as to: (1) whether Lee has a constitutionally protected liberty interest and (2) the ability to control access to nonpublic fora.

# INTRODUCTION

The question the Court must answer in this case is whether a 42 U.S.C. § 1983 cause of action shall lie against a City Manager sued individually and a City for a plaintiff who verbally abuses, disrupts, and even assaults a municipality's employees in their nonpublic forum workplace, and disregards any reasonable restrictions imposed therein, when that same municipality eventually decides to issue a trespass warning of limited scope that does not apply to any space that is not a nonpublic forum, simply because said municipality had an unwritten and informal trespass policy based only on state trespass law that had administrative avenues for an appeal of any trespass warning, which said plaintiff wholly disregarded and voluntarily opted not to pursue, claiming that the City Manager was biased.

## STATEMENT OF THE ISSUES

1. Whether the District Court erred in ruling that the City of Gulfport did not violate the substantive due process clause in issuing the two trespass warnings to Appellant after he trespassed on their nonpublic forum municipal office and building department premises, had consistently verbally abused its employees on previous

occasions, and demonstrated a stated willingness to disregard reasonable requirements, restrictions, and directions of municipal employees.

2.     Whether the District Court erred in ruling that the City of Gulfport did not violate the procedural due process clause of the Fourteenth Amendment in issuing two trespass warnings of limited scope to someone with a demonstrated and longstanding history of verbally abusing its employees, who trespassed on the dates the trespass warnings were issued and disrupted a nonpublic municipal employment forum at City Hall and the Building Department during the COVID lockdown.

3.     Whether Lee has a constitutionally protected liberty interest in accessing Gulfport's City Hall building during business hours (and on one occasion during the COVID-19 lockdown) when it is a nonpublic forum not being used for expressive purposes and is simply managing its internal business operations.

## STATEMENT OF THE CASE

### Statement of the Facts

While Lee omits much, if any, mention of his history with the City of Gulfport from his brief, the relevant reality is that he has had

an extremely contentious and vitriolic relationship with the City's officials from the beginning of his relationship with them in early 2019, due in part to his longstanding (and legally mistaken) belief that any regulation of his ice-cream cart business venture by the City was preempted by a law passed in 2020 that preempted certain ordinances or regulations of food trucks by local governments, and his disagreement with the City's longstanding policy disallowing food trucks on public rights-of-way in the downtown Waterfront Redevelopment District outside of special events. This relationship began in early 2019, when Lee first met with Appellee Mr. O'Reilly, the City of Gulfport's City Manager. [Doc. 89-2, 49:4–50:22]. The record evidence supports the fact that Mr. Lee had two or three meetings in person with Mr. O'Reilly in early 2019, all of which resulted in Lee launching into angry verbal attacks full of vulgar insults directed towards Mr. O'Reilly and engaging in shouting matches. [Doc. 89-2, 50:2-7, Doc. 89-9, ¶¶ 4-6].[1]

---

[1] The affidavit of Lori Roach, Mr. O'Reilly's assistant, has particular veracity and evidentiary value as to the history of interactions between Lee and the Defendants because she logged her recorded recollections via the complaint she filed on June 11, 2020, which documented the hostile work environment Lee had created for her, described *infra*, and these same recorded recollections informed her

After about a one-year hiatus from interacting with City officials, Lee reestablished contact with the City of Gulfport's City Hall[2] around May 2020. [Doc. 89-2 at 60:10–61:25]. Lee did not deny in deposition that he was verbally abusive and repeatedly profane with Mr. O'Reilly's assistant, Lori Roach, at that time when they spoke over the phone, or even that he called her a "fucking lying bitch" and/or a "fucking liar" at that time. *Id.* In June 2020, during the COVID-19 lockdown, Lee returned to the City Hall in person and had an encounter with City officials that again became disruptive to the workplace environment. [Doc. 89-9, ¶¶ 7-11]. On or about June 11, 2020, Mr. O'Reilly's assistant, Lori Roach, filed a complaint, alleging that Lee had created a hostile work environment for her. *Id.* at ¶ 12. These encounters at City Hall were in addition to several interactions that Appellant had around that time with Gulfport police officers on or around public rights-of-way in which he begged officers to write him a ticket for attempting to operate his ice-cream cart in

---

affidavit on file with the Court (Doc. 89-9) in support of the City's Motion for Summary Judgment [Doc. 89].

[2] The City of Gulfport, a city of about 11,000 residents per the latest U.S. Census data, has a small, single-story City Hall Complex which houses multiple departments. *See* Doc. 89-8, ¶¶ 2-3.

Gulfport's Waterfront Redevelopment District so that he could sue the City, and argued that he was preempted and there was nothing that the City could do about his ice-cream cart business. [Doc. 89-2 at 72:21 – 73:14, 91:2-7, Doc. 89-10].

Lee's misunderstanding and false belief as to preemption—one that the District Court in this case correctly held was wrong as a matter of law, granting summary judgment as to all counts related to the City's regulation of his ice-cream cart business—led to a number of hostile interactions between City officials and Lee, as well as non-employees of the City who similarly became targets of his ongoing ire, such as the then-president of the Gulfport Merchants Association, Barbara Banno, whom, as Lee pointed out in his brief, he could not deny having publicly called a "dyke" and a "cunt," among other insults. [Doc. 89-20, 31:21–32:12; Doc. 89-15, 26:15-22]. Besides creating a hostile work environment for Ms. Roach, at least one Gulfport employee, Shirley DiBucci, provided an affidavit that her interactions with Lee in her role at Gulfport's City Hall left her scared and fearful for her safety. [Doc. 89-18]

Following multiple years of verbal abuse and harassment by Lee, whose continued belief that any regulation of his ice-cream cart

was preempted by state law caused him to attempt to strongarm his way around multiple municipal employees' earnest explanations of policies related to vendors and sales on public rights-of-way, Lee was eventually issued two trespass warnings for his recidivist behavior at Gulfport's City Hall for more bad conduct that was an expansion of prior such aggressive and threatening behaviors. [Doc. 28-2, Doc. 28-3; Doc. 89-4, 71:9-15]. These trespass warnings, as was explained to Lee at the time the first trespass warning was issued to him, on September 4, 2020, were limited in scope as they did not apply to the meetings of the city council,[3] which he was and is still allowed to attend. Moreover, Lee was verbally informed, as video from that day demonstrates and as Lee himself admitted in emails to the City that were produced in discovery,[4] that it was his aggressive and threatening behavior that led to the issuance of the trespass warnings.

On the date of Lee's September 4, 2020 trespass from the Gulfport City Hall and its Building Department, it is undisputed in

---

[3] Lee's Brief, p. 4; *see also* Doc. 89-8 at ¶¶ 13-14.
[4] *See* Doc. 92-4 (emails attached in response to Plaintiff's Motion for Partial Summary Judgment).

this matter that he attempted to force his way into a restricted area—then closed to the public for COVID-19—by way of repeatedly hitting a handicap access button, to keep the door from closing. [Doc. 89-2, 147:20 – 148:6; Doc. 89-16, 70:22–71:2; Doc. 89-8, ¶ 10-14; Doc. 92-2]. This was out of frustration due to Lee's belief that others were being serviced in person that day when he was not. [Doc. 89-2 at 92:11–94:21, 95:16–96:4; Doc. 92-2]. Lee was upset that he was asked to leave an application for a garage sale permit outside in a container on a table, as he wanted it to be processed inside immediately. *Id.* This caused him to attempt to force his way inside the Building Department by hitting the handicap access button, as he believed he was owed in-person service during the COVID-19 lockdown, and that the City had singled him out and was intentionally delaying his garage-sale permit application.

Later, on September 14, 2021, he was again issued a trespass warning—quite leniently this time considering that he was already trespassed from the same facility and could have, by law, been arrested. [Doc. 89-16, 19:17–20:17]. This incident took place only seven weeks after Lee had assaulted and taunted a law enforcement officer, Commander Joshua Stone of Gulfport's Police Department,

at City Hall on July 22, 2021 with a CD,[5] for which he later pleaded guilty to a felony offense of battery on a law enforcement officer.[6] On this second date, Lee videotaped himself loitering around the Gulfport Building Department and demanding an explanation for why he had allegedly received a phone call early that morning from the Building Department.[7] As he walked around and peered into the private offices of employees who were working in the Building Department, Lee filmed the interior spaces in which they were working and knocked on the windows, demanding an answer and informing those therein that he was filming for his Facebook Live audience.

---

[5] A video of this concerning interaction was mailed to the District Court upon notice of the conventional filing of evidence. *See* Doc. 97. In the video, labeled "1a" in the drive, Lee speaks to Gulfport's Commander Stone in a verbally abusive and highly disrespectful manner before eventually taunting and then hitting him with the CD he was provided in response to a public records request, while yelling into the City Hall lobby.

[6] *See* Doc. 89-2 at 132:20–133:16; Doc. 116-3.

[7] A video of Appellant's behavior on this date, labeled "2," was similarly mailed to the District Court. The other videos on the drive demonstrate other occasions when Lee demonstrated a lack of respect for restrictions in nonpublic fora and were cited and relied on in the City's Motion for Summary Judgment [Doc. 89, p.12].

At least four or five times on that date, only seven weeks after he had assaulted a police officer at City Hall because of his frustration with the CD he was provided in response to a public record request, Lee opens the door with the handicap button, as he did on the date of his first trespass, and yells inside for help, while informing everyone that he is filming and on Facebook live. Without an appointment or any pressing issue, he continues to loiter just outside of the building, videotaping and demanding an explanation for the phone call he had allegedly received. Lee's behavior in the video from the date of the second trespass makes it clear that he was not going to leave, even though he at one point claimed he was going to. For good measure, after being issued the trespass warning and asked to leave, he goes back up to a window and the door, although the issuing officers ignore such behavior. On both of the occasions on which Lee was trespassed, he was on notice that his presence was not desired in either of the areas he was attempting to access—on September 4, 2020, by the fact that the Building Department was closed to the public, as he was informed [Doc. 92-2, Doc. 89-2, 147:6-10], and on September 14, 2021, by the issuance of the prior trespass

warning based on his behavior at the exact same department,[8] and his refusal to leave after being asked to do so.

**No Formal Trespass Policy**

Moreover, despite Lee's representations to this Court, the undisputed record evidence in this case supports the fact that the City of Gulfport did not have a formal or written trespass policy in place at the time of the trespass warnings that were issued to Appellant. [Doc. 1-4, "Effective Date"]. Instead, the City simply had an informal policy that was wholly based on state trespass statutory law, whereby supervisors of facilities could issue trespass warnings that recipients could then ask to be rescinded. [Doc. 89-16, 41:9–42:16]. Florida state trespass law does not require that a crime be committed prior to the issuance of a trespass warning, or that a warning be issued prior to a written warning. *See* § 810.08(1), Fla. Stat.; *see also* § 810.09(1)(a), Fla. Stat. Instead, one may be arrested for trespassing after refusing a verbal request to leave the premises.

---

[8] Lee's unwillingness to go inside demonstrates that he knew the September 4, 2020 trespass warning applied to the Building Department, where the actions that formed the basis for the first trespass warning occurred.

The written appeals directive that Lee refers to was not even in existence in 2020 or 2021. It was only after Lee had been issued the statutory trespass warnings at issue, on January 5, 2022, that the City of Gulfport's Police Department adopted Written Directive 406. [Doc. 1-4]. Also contrary to Lee's representations, Mr. O'Reilly was clear in testifying that he did not tell the Police Department the duration for which a trespass warning should be issued, and that it was an issue that had not really been decided at that time. [Doc. 89-4, 39:16–40:25]. The City instead has continued to do business with Lee,[9] even as he has continued to be routinely profane and aggressive with officials via email, including by threatening to go after their personal assets in litigation. [Doc. 92-1, p.1].

It is also important to note that Lee was provided access to the interior of Gulfport's City Hall following his receipt of the first trespass warning. Multiple videos produced in discovery in this matter showed Lee being escorted into City Hall. However, after Lee assaulted Commander Joshua Stone on July 22, 2021, this practice ended. Still, the access he continued to be provided before his

---

[9] Doc. 89-8, ¶ 13-14.

violence raised concerns as to public safety further demonstrates the limited nature of the trespass warnings.[10]

Additionally, Lee *was* made aware of both the basis for the first trespass warning and the ability to appeal his trespass warning(s) to Mr. O'Reilly as the City Manager. [Doc. 89-2 at 161:21–166:18; *see also* Doc. 92-4, emails from Lee demonstrating that he was informed that it was his aggressive and threatening nature and attempt to force his way into the Building Department that caused that trespass, and that he had a conversation with Mr. O'Reilly in late December 2020 regarding his trespass warning, but made clear that he deemed the city council, Mr. O'Reilly, *and* the mayor as corrupt and unable to objectively preside over any appeal][11]. Moreover, Lee testified, in deposition, that he made the conscious decision not to file an appeal

---

[10] It is worth noting that Lee has also threatened members of the Gulfport City Council. *See* Doc. 89-4 at 29:15–31:20. He also threatened to hit Mr. O'Reilly at a 4th of July event in 2024, after the instant litigation was initiated. *Id.* at 21:4-7. Contrary to Lee's representations, such behavior occurred after he had already had an opportunity to appeal his trespass warnings to Mr. O'Reilly.

[11] In these emails, Doc. 92-4 at pp. 1-3, Lee references having watched a video from September 4, 2020, in which he was informed that his aggressive and threatening behavior towards employees in City Hall was part of the basis for the issuance of the trespass warning.

of either trespass warning pursuant to the subsequently-adopted Written Directive 406's appellate remedy, and the emails produced in discovery and attached to Doc. 92-4 support this. [Doc. 89-2, 166:13-18]. Mr. O'Reilly also testified that if Lee had been unsatisfied with his appeal decision, he would have then had the ability to appeal such a decision to the City Council. [Doc. 89-4 at 22:15–23:7].

As for the basis for issuing a trespass warning, Mr. O'Reilly made it clear that supervisors should either personally observe the conduct that forms the basis for a trespass or base a decision to issue a trespass warning off of staff input. *Id.* at 45:22–46:6. The City's informal, unwritten trespass policy is based on state law, § 810.08-09, Fla. Stat., which applies to both private and public property and does not contain a requirement of a warning being issued prior to a trespass warning being issued. Still, Mr. O'Reilly testified that Lee was warned by the Building Department official that his repeated attempts to enter into a restricted area were unacceptable. *Id.* at 85:24–86:6. It is also clear that Lee's first trespass was the result of a continuing pattern of behavior, as Mr. O'Reilly testified that Lee's behavior on September 4, 2020 was "an expansion of his behaviors in City Hall"—hence why he was trespassed from City Hall as well,

14

even though he initially was at the Building Department that day. *Id.* at 71:9-15.

Finally, regarding duration, Mr. O'Reilly testified that he was not involved in determining trespass duration at all, that he does not tell the police how long they should be issued for, that there has never previously been a determination on the duration of trespasses, and that, if anything, it would be fair to say that the notices have been "indefinite" as a default in some cases, without a definitive time determination. *Id.* at 40:10–41:13. The duration of said notices was the result of a decision that the Gulfport Police Department implemented on a case-by-case basis. [*See* Doc. 89-8, ¶ 12; Doc. 89-4, 40:10-25]. This was all with the understanding and knowledge that an individual who was issued a warning could ask for it to be rescinded, which the Gulfport Police Department took to be a natural and logical implication of state trespass law. [Doc. 89-16, 56:1–57:7].

**Course of Proceedings**

Lee initiated a lawsuit against Appellee City of Gulfport in December 2023. [Doc. 1]. His Amended Complaint sought damages and declaratory and injunctive relief, bringing four counts against the City of Gulfport for alleged procedural and substantive due

process violations under 42 U.S.C. § 1983, in addition to a claim, in Count VIII, that Gulfport's trespass policy was void for vagueness in violation of the Procedural Due Process Clause of the Fourteenth Amendment. [Doc. 28]. In ruling on motions to dismiss filed by the City of Gulfport and James O'Reilly, on January 22, 2025 the District Court dismissed Count VIII with prejudice, finding, as a matter of law, that it was sufficiently clear what conduct the informal trespass policy proscribed, while otherwise denying the motions at that procedural stage. [Doc. 67]. The informal trespass policy, as Lee points out in his brief,[12] allows supervisors of facilities to issue trespass warnings when they have reason to believe an individual has caused or is likely to cause a disruption of services or put the safety of staff or the public at risk. [Doc. 89-4, 45:13-21].

On May 29, 2025, Appellee City of Gulfport filed its Motion for Final Summary Judgment [Doc. 89], on all counts in Lee's Amended Complaint other than Counts X and XI, which sought only declaratory and injunctive relief that would otherwise by disposed of substantively by the District Court's ruling on the City's Motion for

---

[12] Lee's Brief, p. 5.

Final Summary Judgment on Counts III, IV, VI, and VII. Lee responded to the City's Motion on June 19, 2025 [Doc. 95], and the City replied on July 4, 2025. [Doc. 101]. Lee filed his own Motion for Partial Summary Judgment [Doc. 87] on May 29, 2025, moving for summary judgment solely on Counts III, IV, VI, and VII. The City responded on June 19, 2025 [Doc. 92], to which Lee replied on July 2, 2025. [Doc. 98].

On November 13, 2025, the District Court entered an order granting summary judgment to the City of Gulfport on Counts I, III, IV, V, VI, and VII of Lee's Amended Complaint, otherwise dismissing three separate counts—Counts II, IX, and XII—and finding that Lee lacked standing to pursue them. [Doc. 122]. On Counts III and IV of Lee's Amended Complaint, which argued that Gulfport's trespass policy facially and as applied violated the substantive due process clause of the Fourteenth Amendment, the District Court found that, first, any liberty interest Lee may have had in accessing the City Hall complex[13] was forfeited when he refused to leave the premises and

---

[13] The District Court did not rule that Lee *had* a liberty interest in accessing City Hall—it evidently simply assumed, without deciding, that he did. There is no binding precedent from this Court on whether there is a liberty interest in accessing such a governmental workplace

caused disruptions on the dates in question. *Id.* at pp. 20-21. Second, the District Court found that even if he did not forfeit his liberty interest, there was no substantive due process violation because the City's actions, in trespassing Lee, survive both tests by which such actions would be judged. *Id.* at p. 22. When executive action is involved, only the most egregious conduct can be said to be arbitrary, and to be cognizable, the level of "executive abuse of power" must rise to the level of being "conscience shocking." *Id.* at pp. 22-23. There is no dispute between the parties that Mr. O'Reilly's issuance of the subject trespass warnings to Lee was executive action, as the District Court noted. *Id.* at p. 23. The District Court also found that the Defendants' actions, in issuing trespass warnings of an indefinite nature to Lee due to his refusal to leave the premises when directed, did not shock the conscience. *Id.* at pp. 26-27.

In analyzing the City and Mr. O'Reilly's actions, the District Court noted that on September 4, 2020, Lee was informed that he

---

building during business hours, although Lee has assumed throughout this litigation that public lands and governmental workplace buildings are viewed identically by this Court, and has consistently embellished and sensationalized by making it seem as though he has been barred access to City Hall entirely.

would be able to attend meetings of the City Council and continue to do business with City Hall through the website and over the phone, and that Lee hit the handicap access button multiple times even though the Building Department was closed to the public at the time due to COVID-19 precautions. *Id.* at p.25. It further noted that Lee was able to appeal his trespass to Mr. O'Reilly as the City Manager, and that if he did not like his decision, he could then appeal that to the city council. *Id.* at p.26. As for the September 14, 2021 incident, the District Court noted that Lee again refused to leave the premises, and was not only disrupting the work environment of City Hall by knocking on windows and filming employees' private workspaces, but was also loitering around and refusing to leave until an answer was provided as to why he had previously received a call from the department. *Id.* at pp. 25-26. Based on the record evidence as to the actions taken by the Defendants as well as Lee's actions on the dates in question, the District Court found that Defendants' actions did not amount to conscience-shocking conduct. *Id.* at pp. 26-27.

Although the District Court granted the Defendants' Motion to Strike an argument Lee raised for the first time in a reply to the City's response to his Motion for Summary Judgment, the District Court

nonetheless considered Lee's arguments regarding whether the City's trespass policy, as legislative action, would survive "rational basis" scrutiny under the substantive due process clause of the Fourteenth Amendment. *Id.* at p. 24. Because Lee's challenge did not implicate any fundamental rights, it was reviewed under the highly deferential rational basis standard. *Id.* at pp. 27-28. This standard requires a policy to be "rationally related to the achievement of some legitimate government purpose." *Bannum, Inc. v. City of Fort Lauderdale, Fla.*, 157 F.3d 819, 822 (11th Cir. 1998).

On this issue, the District Court found that the City had definite and understandable purposes, or goals, it could have been pursuing in that it had the power to preserve property under its control—here, City Hall—for the use to which it has lawfully been dedicated, and also had a legitimate interest in ensuring public safety. [Doc. 122, pp. 28-29]. In analyzing whether a rational basis existed for the City to believe that this informal policy would further the hypothesized purpose, the District Court found that the second prong of the rational basis test was satisfied, as the City's [informal] policy was sufficiently related to the legitimate governmental interests of public safety and limiting the use of its property to its intended purposes.

*Id.* at p. 29. As such, the District Court held that Lee's facial challenge to the policy was meritless since it survives "rational basis" review. *Id.*

On Counts VI and VII, which brings a § 1983 challenge to the trespass warnings issued to Lee under the procedural due process clause of the Fourteenth Amendment, the District Court noted the elements for such claims under § 1983 and reiterated its prior finding that Lee was not deprived of a *constitutionally protected* liberty interest because Lee had already forfeited any liberty interest he had in accessing the City Hall Complex, other than for attending City Council meetings, when he caused continued disruptions and refused to leave the premises as required under Florida trespass law. *Id.* at p. 31 (citing § 810.08, Fla. Stat.). Accordingly, the District Court correctly ruled that the City was entitled to summary judgment on Counts VI and VII. *Id.* at p. 32.

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo* and applies the same standards as that court. *Lucas v. W.W. Grainger, Inc.,* 257 F.3d 1249, 1255 (11th Cir. 2001). A grant of summary judgment may be upheld on any basis supported by the

record. *Id.* at 1256. Summary judgment is appropriate when "the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine when the evidence is such that a reasonable jury could return a verdict for the non–moving party, and a fact is not material if a dispute over that fact will not affect the outcome of the suit under governing law." *Baker v. Moskau,* 335 F. App'x 864, 868 (11th Cir. 2009). While all reasonable inferences are drawn in favor of the non-moving party, that party must present affirmative evidence supporting its position to defeat an otherwise appropriate motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

## **SUMMARY OF ARGUMENT**

The District Court correctly entered summary judgment for the City in this matter, finding that Lee forfeited any liberty interest he may have had in accessing City Hall by behaving the way he did on the dates on which he was issued the trespass warnings that Lee is challenging in this case. Because Lee forfeited his putative liberty interest, he fails to get past the first element of a claim for a due process violation, whether considered as a procedural or substantive

due process challenge. On the date of Lee's first trespass, he attempted to force his way into a closed building and was put on notice that the Building Department was closed due to COVID-19 public health emergency concerns, but refused to accept any such restriction.

On the date of Lee's second trespass, he demanded an explanation for why he had previously received a phone call from the Building Department, and loitered around the curtilage of the building filming, knocking on windows, and yelling at those inside, while informing them that he was performing a First Amendment audit and was live on Facebook. There simply is no constitutionally protected liberty interest in demanding an immediate explanation for such a purported phone call and returning to a facility from which one has already been trespassed to loiter around and film and disrupt those working therein.

The City strongly disputes the notion that Lee has a liberty interest in accessing and disturbing its workplace and employees during business hours, when it is a nonpublic forum, and believes that the District Court could have ended its due process analysis by finding that he had no such liberty interest, a question it did not

address. Lee has not been "banned" from City Hall and has continuously been allowed access when Gulfport's City Hall is opened to the public for expressive purposes. The case law discussed in the next section of this brief supports the City's belief that it had the right to control access to its workplace based on Lee's well-demonstrated tendency to disrupt its workplace environment, and verbally abuse, harass, and even assault its employees.

## ARGUMENT

I. ***The summary judgment as to Counts VI and VII should be affirmed because Lee has no liberty interest in accessing City Hall during business hours, but alternatively, even if he does, he forfeited it as the District Court found.***

### A. ***Lee has no liberty interest in accessing City Hall during business hours.***

In order to establish a procedural due process claim, Lee must first establish that he had a liberty interest in accessing the interior of City Hall and the Building Department. To sustain a § 1983 procedural due process claim, a plaintiff must show: "(1) a deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate due process."

*Arrington v. Helms*, 438 F.3d 1336, 1347–48 (11th Cir. 2006). Lee cannot satisfy element (1), which is dispositive of his § 1983 procedural due process claims. As to element (1), the First Amendment "does not guarantee" unfettered right of access to public buildings "simply because [they] are owned or controlled by the government." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983). The government, "no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." *Adderley v. Florida*, 385 U.S. 39, 47 (1966), *reh'g denied*, 385 U.S. 1020 (1967). "Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right of free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *Cornelius v. NAACP Legal Defense and Educ. Fund Inc.*, 473 U.S. 788, 799–800 (1985).

The "extent to which the government can control access depends on the nature of the relevant forum." *United States v. Kokinda*, 497 U.S. 720, 726 (1990); *Cornelius*, 473 U.S. at 800. "The existence of a right of access to public property and the standard by

which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Perry*, 460 U.S. at 44. Importantly, regulation of speech on government property not by tradition or designation a forum for public communication is examined only for reasonableness. *Id.* at 46. This is in distinct contrast with regulations on speech in traditionally public fora such as municipal sidewalks and parks, as well as fora designated by the government to be used for expressive activities, for which fora the standard is strict scrutiny. *Id.* at 45. As this Court recently clarified in *McDonough v. Garcia*, even when a government opens a limited public forum for a particular purpose, it "may legally preserve the property under its control for the use to which it is dedicated." 116 F.4th 1319, 1327-28 (11th Cir. 2024) (citing cases). For example, in *McDonough*, this Court found that the defendant city's council meetings were limited public forums, as they were opened to the public at large but limited to speech on matters "pertinent to the City." *Id.* at 1328.

In determining whether a property is a traditional public forum, or a public forum of any other variety, courts analyze the intent of the governmental entity as well as the nature of the property involved.

The Supreme Court in *Cornelius* made it clear that the courts should not find that "a public forum has been created in the face of clear evidence of a contrary intent, [] nor will we infer that the government intended to create a public forum when the nature of the property is inconsistent with expressive activity." *Cornelius*, 473 U.S. at 803. Importantly here, courts that have evaluated the issue have consistently held that office spaces for governmental employees are nonpublic forums. As the Supreme Court stated in *Cornelius*:

> The [government] workplace, like any place of employment, exists to accomplish the business of the employer. [T]he Government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs. It follows that the Government has the right to exercise control over access to the [government] workplace in order to avoid interruptions to the performance of the duties of its employees.

*Id.* at 805-06.

Courts have also recognized that access to public facilities may be restricted without impacting constitutionally protected liberty interests. *See, e.g.*, *Williams v. Town of Greenburgh*, 535 F.3d 71, 75 (2d Cir. 2008) (finding that access to public facilities does not amount to a constitutionally protected liberty interest); *Small v. Astrue*, Civil No. 08–cv–01864–LTB–KLM, 2009 WL 2134345, at *8 (D. Colo. July

27

14, 2009) (former employee of Social Security Administration ("SSA") had no liberty interest in access to federal building housing SSA); *Adderley v. State of Florida,* 385 U.S. 39, 47 (1967); *Banuelos v. Martinez,* No. 1:15-cv-00010-AWI-GSA, 2015 WL 3660261, at *3 (E.D. Cal. June 11, 2015) ("Plaintiff does not enjoy a liberty interest to enter into any state office without restriction."). These cases recognize that the government has the same right as a private employer to maintain the integrity of its workplaces.

Importantly, the fact that an employee office or reception area in a public building is open to the public for purposes of conducting official business, or receiving government services, does not change its status as a nonpublic forum. *Helms v. Zubaty* illustrates this point well. 495 F.3d 252, 257 (6th Cir. 2007). In *Helms,* the Sixth Circuit found no evidence that the county executive's "open-door policy" was intended to create a public "forum for expressive activity" in the reception area outside of an office suite shared with several other county officials and their staff. *Id.* Additionally, the court found no reason why the county executive's practices should "preempt the county's control over a government workplace for purposes of a First Amendment analysis," noting that government workplaces are "a

forum that courts have consistently defined as nonpublic." *Id.* Other courts that have analyzed such spaces have also found them to be nonpublic forums. *See Lavite v. Dunstan,* 932 F.3d 1020, 1029 (7th Cir. 2019); *O'Brien v. Welty,* 818 F.3d 920, 931-32 (9th Cir. 2016); *Freedom Foundation v. Sacks,* No. 3:19-CV-05937-BJR, 2021 WL 1250526, at *7 (W.D. Wash. Apr. 5, 2021), *aff'd sub nom.* No. 21-35342, 2022 WL 671017 (9th Cir. Mar. 7, 2022). Similarly here, other than a small lobby area, Gulfport's City Hall, a single-story complex, primarily consists of multiple departments housed in a modest-sized municipal building.

If the City of Gulfport's City Hall is a nonpublic forum during business hours, any restrictions on access to said forum, including through the trespass warnings at issue in Plaintiff's Amended Complaint, need only be viewpoint neutral and reasonable to survive First Amendment scrutiny, based on existing, governing case law. *See, e.g., Perry,* 460 U.S. at 46. In *Coley-Pearson v. Martin,* 689 F. Supp. 3d 1339, 1350 (S.D. Ga. 2023), *aff'd on other grounds,* 156 F.4th 1133 (11th Cir. 2025), the plaintiff, a city commissioner, was issued criminal trespass warnings indefinitely limiting her access to a polling place for any purpose other than voting. This followed

previous disruptions she caused at a polling place by engaging in a disruptive argument and improperly touching buttons on voting machines. *Id.*[14] The plaintiff, apparently known for being an agitator, was banned from any polling place in the county at issue other than to appear to vote. *Id.* at 1351. After being asked to leave, the plaintiff refused and was arrested. *Id.* at 1352. In analyzing the plaintiff's First Amendment claims, the district court found, in granting summary judgment to the defendants, that while the defendants in that case had not drafted the trespass warnings, *even if they had*, the plaintiff's claims still would have failed because the warning "applies to a nonpublic forum and is a content and viewpoint-neutral restriction that was not unreasonable on the backdrop of Plaintiff's admitted disruption at the Polling Place." *Id.* at 1360.

This conclusion was not changed by the fact that plaintiff argued that the parking lot of the polling place was a traditional public forum, something the district court rejected. *Id.* at 1363-64. Analyzing the restriction for viewpoint neutrality, the district court

---

[14] Nothing in *Coley-Pearson* suggests the plaintiff had the sort of extensive history of disruptions and verbal abuse Lee has with the City here.

found that there was no evidence that defendants were motivated by a desire to suppress the plaintiff's viewpoint, and as to the element of reasonableness, the court further found that even assuming the warning was indefinite, and did not only apply to the 2020 election cycle, it was "not unreasonable to prevent further disruption at the polling place." *Id.* at 1369. Indeed, as the district court pointed out, in a nonpublic forum, "there is no requirement of narrow tailoring"— just a "requirement that the government 'be able to articulate some sensible basis' for excluding Plaintiff." *Id.* Because the defendants had articulated a reasonable basis for the issuance of the warning, the district court found that the plaintiff's First Amendment rights were not violated. *Id.* at 1370.[15]

The same reasoning should apply to the instant case, as the City of Gulfport's City Hall and Building Department should both be

---

[15] To the extent that it is relevant for this Court's analysis, the district court in *Martin* further found that because the criminal trespass warning was issued *after* plaintiff's disruption occurred, it was a subsequent punishment, not a prior restraint, imposed in that case for the plaintiff's refusal to leave the polling place after causing a disruption. *Id.* at 1370. Similarly here, Lee was only issued the trespass warnings after he had disrupted and disrespected restrictions at Gulfport's City Hall on numerous prior occasions, including on the dates in question.

viewed as a nonpublic forum at the time periods during which Plaintiff has been barred access, and Lee has no constitutionally protected liberty interest in accessing it during such periods. Along with having a small lobby that is publicly accessible, the City has a small, single-story City Hall which houses multiple departments, and is ill-equipped to handle noise, a crowd, or any sort of disruptive behavior. *See Claudio v. United States*, 836 F. Supp. 1219 (E.D.N.C. 1993) (finding the lobby of the Raleigh Federal Building was a nonpublic forum due to its physical characteristics); *Cornelius*, 473 U.S. at 802-04; *Sefick v. Gardner*, 990 F.Supp. 587, 593 (N.D. Ill. 1998) (finding that a federal building was a nonpublic forum); *Grossbaum v. Indianapolis-Marion Cnty. Bldg. Auth.*, 63 F.3d 581, 583 (7th Cir. 1995) (city-county building serving as the seat of government for the City of Indianapolis and the county was a nonpublic forum). There is no record evidence in this matter which would tend to show that the City has ever utilized its City Hall's lobby or City Hall Annex more generally as a forum for public expression

during business hours.[16] Its physical characteristics simply do not logically or pragmatically make it conducive to such uses.

Here, again, Lee has only been disallowed direct personal access to Gulfport's City Hall during business hours, at times when the City has not opened up its City Hall complex for public comment or expression. He continues to be allowed to attend all meetings of the Gulfport City Council, has attended some, and was informed that he would be allowed to attend them when he was handed the first trespass warning. [Doc. 92-2, p.3]. The known, and acknowledged, basis for the trespass warnings' issuance was Lee's threatening, aggressive, verbally abusive, and disruptive behavior towards them, not anything having to do with any viewpoint he had expressed or of which the Defendants were aware. The City had no issue with Lee's desire to express his disagreements as to regulation of his ice-cream cart; instead, it was the disruptive, threatening, and verbally abusive

---

[16] Indeed, a recently adopted ordinance regulating video recording in the Gulfport City Hall would tend to show the opposite. *See* Doc. 47-1 (designating City Hall Annex as a nonpublic forum unless or until a public meeting is convened in such areas pursuant to public notice, and making it clear that recording video is disallowed outside of public meetings). This recent ordinance is consistent with longstanding Gulfport practice.

*manner* in which he would repeatedly and forcibly attempt to discuss said issues with the City that led to workplace disruptions and related concerns. The City asserts that Lee has no liberty interest in accessing its City Hall during business hours, which is dispositive of any due process analysis,[17] and that, further, if its restrictions are evaluated under the First Amendment, its restrictions are both viewpoint neutral and entirely reasonable.

**B.    *In the alternative, if Lee had a liberty interest, he forfeited it.***

Because the above standard is the standard which should apply to the restrictions the trespass warnings imposed, whether Lee forfeited a liberty interest is a question that, the City asserts, this Court need not answer as he has no protected liberty interest in accessing City Hall during business hours, which disposes of both of his due process claims.[18] Still, if this Court were to find that Lee had

---

[17] *See Williams*, 535 F.3d at 75-76, discussed *infra.*
[18] Although the District Court did not address this argument, this argument was made in the City's Motion for Summary Judgment filed with the District Court. *See, e.g.*, Doc. 92 at p. 24 ("Absent a First Amendment violation, it is unclear what source, if any, would support Plaintiff's having a liberty interest in unfettered access to the City's City Hall or Annex, a nonpublic forum…Lee certainly has no

some liberty interest in accessing City Hall during the periods in which he has been barred direct access—something the District Court did not rule on—for the purposes of a § 1983 procedural due process claim, even if a person has a liberty interest to enter a state office, "a person may forfeit [a] liberty right by trespass or other violation of law." *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011) (noting that a person may forfeit a liberty right by trespass or other violation of law) (citing *Church v. City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir. 1994))[19]; *Occupy Fort Myers v. City of Fort Myers*, 882 F.Supp.2d 1320, 1338-39 (M.D. Fla. 2011) (holding plaintiffs failed to establish likelihood of success on the merits of count alleging a violation of Fourteenth Amendment liberty interests because there was no liberty interest in plaintiffs' use of the park).

Here, it is furthermore important for this Court to note as to *Sheets v. Punta Gorda*, 415 F.Supp.3d 1115, 1120 (M.D. Fla. 2019),

---

substantive due process right, and has failed to plead any such interest from which Defendant could ascertain the source thereof.").

[19] It is worth noting that although this Court in *Catron* cited its prior decision in *Church v. City of Huntsville* for this proposition, in *Church*, this Court did not suggest that a law *must* be violated for a liberty interest to be forfeited, and noted that there was no liberty interest, for example, in storing one's personal belongings on public lands.

cited by Lee in the proceedings below (Doc. 87, p.6) for the notion that he has a liberty interest in visiting City Hall, that the plaintiff in that case was barred from attending City Council meetings, and the district court in that case cited an unpublished Texas case in which the plaintiff in that case was *also* barred from attending city council meetings for the proposition that the plaintiff had a liberty interest. *See Cuellar v. Bernard*, No. SA-13-CV-91-XR, 2013 WL 1290215, at *3 (W.D. Tex. Mar. 27, 2013) ("The criminal trespass notice completely bans Plaintiff's presence at City Hall and the Municipal Plaza Building at all times and for all purposes.") (emphasis added); *Sheets*, 415 F.Supp.3d at 1120. Those facts do not exist here. However, to the extent that the district court in *Cuellar* may have attempted to extend the right to intrastate travel to governmental buildings—in that case—City Hall during business hours, the City would argue that that was improper and *wholly* inconsistent with case law on public forum doctrine, as the Second Circuit in *Williams*, discussed *infra*, correctly found.

In this case, Lee's disruptive actions on both of the dates he was trespassed were inconsistent with the purposes of the nonpublic forum from which he was twice trespassed. *See supra*, pp. 6-7. On

September 4, 2020, he attempted to force his way into a restricted area during COVID-10 lockdown restrictions by forcing open the door with the handicap access button after being informed the department was closed to the public.[20] On September 14, 2021, only seven weeks after battering, verbally abusing, and taunting a law enforcement officer at the same Annex building, he returned to the same Building Department where his behavior resulted in the first trespass warning, demanded an explanation for a phone call he had purportedly received, and was again causing disruptions and refusing to leave. On both occasions, he forfeited any limited, at best, liberty interest he may have had by violating Florida law and causing workplace disturbances. On a procedural due process claim, Lee does not even get past the first element, as the District Court correctly found, even if this Court were to find he had a liberty interest. This ends the analysis.

Lee's other arguments on this issue also similarly fail. Lee argues that he was entitled to due process to determine *whether* he

---

[20] *See* § 810.09(2)(a), Fla. Stat. (noting that if the offender willfully opens any door, he or she is guilty of trespass on property other than a structure or conveyance).

had forfeited his liberty interest. Here, Lee seems to misinterpret the elements of a procedural due process claim under § 1983 and this Court's holding that one may forfeit their liberty interest as tantamount to a *preliminary* finding that does not otherwise obviate the need to proceed to an analysis of the second and third elements of such a claim. This is simply not the case. The main case cited by Lee and used to support his arguments is *Sheets v. City of Punta Gorda*, No. 2:24-CV-495-KCD-DNF, 2026 WL 151841 (M.D. Fla. Jan. 21, 2026). This case is inapposite to the factual circumstances in this case for multiple reasons.[21]

First, *Sheets* involved a traditional public forum—a farmer's market located on public streets and sidewalks, long recognized as traditional public fora. The City does not deny that such spaces are traditional public fora or that there is a liberty interest in accessing such spaces. Lee, throughout this litigation, however, has *continuously* assumed that the interest one has in accessing such spaces is equivalent to the interest, if any, in accessing governmental

---

[21] As an initial matter, it is worth noting that Lee misrepresents the holding in *Sheets*. The district court denied summary judgment to the defendant—summary judgment was not granted to the plaintiff. *Id.* at *6.

buildings during workplace hours, without citing any case law or legal basis for such a belief.[22] In *Sheets*, while the defendant attempted to argue that the public space in question had been converted into a private one by virtue of its granting a temporary permit, there was no evidence in the permit of such an intention. The district court in *Sheets* cited other cases finding that events sponsored by private entities on city streets were not thereby converted into nonpublic fora. *Id.* at *4.

Importantly, too, the district court in *Sheets* pointed out that if the farmers market were more like private property, the plaintiff would "[have] a problem." *Id.* at *4. On this point, the court cited *Williams v. Town of Greenburgh*, 535 F.3d 71, 75 (2d Cir. 2008), a case in which the Second Circuit found that the right to travel intrastate does not apply to, and has absolutely no bearing on, access to a particular place. *Id.* The Second Circuit specifically provided— illustratively and particularly on point for the instant matter—that "it would distort the right to free travel beyond recognition to construe

---

[22] If he has cited any cases suggesting a liberty interest at all, it has been cases where the plaintiff was banned *entirely* from the city hall, including city council meetings.

it as providing a substantive right to cross a particular parcel of land, enter a chosen dwelling, or gain admittance to a specific government building." *Id.* at 76. The Court found, in affirming dismissal of a due process claim, that the plaintiff's right to intrastate travel had no bearing on whether the town had to admit him into its facility, that a "municipality's decision to limit access to its facilities does not interfere with the right to free movement," and that it "did not deprive him of a liberty interest protected by the Due Process Clause." *Id.* The reasoning from *Williams* should apply to this Court's analysis of the instant matter.

Secondly, in *Sheets*, the question of what the plaintiff was doing on the date of his trespass was in material dispute. 2026 WL 151841 at *5. The plaintiff had video of his interactions with the vendors at the farmers market to contest the defendant's contention that he was causing a disturbance. *Id.* The *Sheets* court found that this issue of fact precluded a finding as to whether the plaintiff had forfeited his interest. *Id.* In contrast, there is no issue of material fact here as to the conclusion that Lee was clearly causing a disturbance and attempting to force his way into a restricted area on September 4, 2020—in fact, Lee does not argue otherwise in his initial brief and

has thus waived any argument to the contrary. *See In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived."). His similar actions on September 14, 2021 are on video and are also, therefore, undisputed, as Defendants have never attempted to argue that Lee did anything on September 14, 2021 that a review of the video does not support.[23]

Third, the defendant in *Sheets* provided no process whatsoever. The city in that case could not point to any administrative process for an appeal, and the plaintiff in that case stated that the city denied the existence of *any* procedure to challenge the warning when he asked. *Id.* at *3. Here, it is well established that Lee was made aware of any ability to appeal his trespass warnings to Mr. O'Reilly, and also to the city council, but regarded a *wide* swath of city officials as compromised and unable to fairly preside over any appeal. *McKinney v. Pate*, 20 F.3d 1550, 1562 (11th Cir. 1994) (citing *Zinernon v. Burch*, 494 U.S. 113, 126 (1990) ("it is not complete unless and until the State fails to provide due process.").

---

[23] Nor has, here again, Lee argued to the contrary.

While Lee criticizes the cases upon which the District Court relied in granting summary judgment and finding that Lee forfeited his putative liberty interest, in *Patrick v. McGuire*, the district court found that the plaintiff forfeited her liberty interest when she failed the comply with the office's policy and the requests that she either comply or leave. No. 8:24-cv-999-MSS-NHA, 2024 WL 4803217, at *8 (M.D. Fla. Nov. 15, 2024). In the case of *In re Watkins*, No. 23-11718, 2024 WL 1174182 (11th Cir. 2024), the plaintiff was a known vexatious litigant who had an injunction with the district court this Court approved under which he could pursue litigation claims only with the district court's approval. In affirming a decision that a proposed complaint was frivolous, and thus could not be filed and pursued, this Court ruled that, because the plaintiff admitted to using homophobic slurs in the library, he may have forfeited his liberty interest by disturbing the peaceful environment of the library. *Id.* at *5 (citing *Catron*). Both cases were germane as to the District Court's ruling that Lee forfeited his putative liberty interest in the instant matter.

As an additional criticism, Lee has argued that because he had not yet received a written trespass warning, he was "not a trespasser

in the eyes of the law." (Lee's Brief, pp. 12-13, 41-42) (citing *Sheets*, 2026 WL 151841, at *5). This statement is demonstrably false as applied to the instant matter, as it is settled law in Florida that one can also be arrested for trespass after refusing only a verbal request to leave the premises. As this Court noted in *In Re Watkins*, No. 23-11718, 2024 WL 1174182, at *5, in rejecting a similar argument, "[n]othing in the statute requires the trespass notice to be written." The language this Court cites from § 810.09(a)(1), Fla. Stat. is instructive:

> [a] person who, without being authorized, licensed, or invited, willfully enters upon or remains in any property other than a structure or conveyance[ ] [a]s to which notice against entering or remaining is given, either by actual communication to the offender or by posting, fencing, or cultivation... commits a trespass on property other than a structure or conveyance.

*Id.* (emphasis added). That is *precisely* what occurred on both of the dates on which Lee was trespassed. He was informed both verbally and by way of physical notice that the Building Department was closed on September 4, 2020. [Doc. 89-2, 147:6-10]. On September 14, 2021, he had already been trespassed based on his behavior at the same department and yet loitered around the curtilage of the department causing a disturbance, refusing to leave until he was

43

leniently trespassed (and then still want back up to the building again before leaving). Nevertheless, he was never arrested by the City's law enforcement officers on either occasion.

Moreover, *Catron* is factually and legally distinguishable from this appeal. In *Catron*, the defendant city had passed an ordinance pursuant to which it was issuing written trespass warnings for traditional public fora, its public parks—in that case, seemingly without the need for any factual basis. 658 F.3d at 1265. The plaintiffs in that case also alleged that the City of St. Petersburg was additionally enforcing said ordinance "curb to curb"—even on public sidewalks and bus shelters on public sidewalks. *Id.*

Here, the City's issuance of trespass warnings was instead based only on Florida trespass statutes, not a municipal ordinance. Florida's trespass statutes do not dictate the manner in which a notice against entering or remaining is provided. *In Re Watkins*, 2024 WL 1174182 at *5. Pursuant to the trespass statute, § 810.09(2)(b), Fla. Stat., a trespass is committed "[i]f the offender defies an order to leave, personally communicated to the offender by the owner of the premises or by an authorized person." Since the City's informal trespass policy empowers supervisors of individual city facilities to

issue trespass warnings, it follows as a necessary logical consequence that said supervisors are authorized to personally communicate an order to leave or not enter. Doc. 28-2.[24]

In the instant matter, Lee's refusal to follow instructions and orders to leave or not enter the premises on both dates before being handed a written trespass warning by police officers made him a trespasser who could have lawfully been arrested based on probable cause. *See Watkins v. Broward Sheriff Office*, 824 Fed. Appx. 865, 868 (11th Cir. 2020). In a show of grace, the City opted not to do so on either occasion. The District Court was again correct in finding that Lee forfeited any liberty interest he had when he repeatedly caused disruptions and refused to leave as required by law, and this Court should affirm on that basis if it finds that Lee has a liberty interest in accessing Gulfport's City Hall during business hours.

## II. *Summary judgment should be affirmed on Counts III and IV because Appellant forfeited his liberty interest, but*

---

[24] A number of cases have clarified that one may be arrested for trespass on public property, particularly in nonpublic fora. *See Adderley v. Florida*, 385 U.S. 39 (1966); *Downer v. State*, 375 So. 2d 840 (Fla. 1979).

*regardless, Appellant's claims fail under either substantive due process analysis.*

**A. *The City's actions are not "conscience shocking" when viewed as executive action.***

Whether analyzed through the lens of executive or legislative action, Appellant's substantive due process claims also fail as a matter of law. The Fourteenth Amendment of the U.S. Constitution prevents states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The Due Process Clause provides two different kinds of constitutional protections: procedural due process and substantive due process." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013) (citations omitted). The Substantive Due Process Clause "protects those rights that are 'fundamental,' that is, rights that are implicit in the concept of ordered liberty." *McKinney*, 20 F.3d at 1556 (quotation and citation omitted). The Supreme Court has recognized a limited number of fundamental rights—namely, those "rights enumerated in the Bill of Rights" and "certain unenumerated rights." *Id.*

For a substantive-due-process claim under § 1983, a plaintiff must prove "(1) a deprivation of a constitutionally protected interest,

and (2) that the deprivation was the result of an abuse of governmental power sufficient to raise an ordinary tort to the stature of a constitutional violation." *Hoefling v. City of Miami*, 811 F.3d 1271, 1282 (11th Cir. 2016) (citation and internal quotation marks omitted). Even when a fundamental right is involved, executive action violates a plaintiff's substantive due-process rights only if the action "shocks the conscience." *See County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003) (quoting *Lewis*, 523 U.S. at 846). There is no dispute between the parties that the issuance of the trespass warnings to Lee was executive action.[25]

Importantly, this Court has only found "conscience-shocking" behavior in two cases. *See 625 Fusion, LLC v City of Fort Lauderdale*, 526 F.Supp.3d 1253, 1271-72 (S.D. Fla. 2021) (noting this, and the fact that, in contrast, a state-employed professor's violent and intentional battery against a student and a firefighter's sexual assault of an apprentice did not meet the standard); *see also Nix v.*

---

[25] *See* Doc. 87, p.9.

*Franklin Cnty. Sch. Dist.*, 311 F.3d 1373 (11th Cir. 2002) (finding that a science teacher's conduct in bringing in a live wire to a physics class which ended up killing a student likewise did not shock the conscience). This Court has noted that "even intentional wrongs seldom violate the Due Process Clause." *Waddell*, 329 F.3d at 1305. And "'conduct intended to injure in some way *unjustifiable by any government interest* is the sort of official action most likely to rise to the conscience-shocking level.'" *Peterson v. Baker*, 504 F.3d 1331, 1336 (11th Cir. 2007) (emphasis added) (quoting *Lewis*, 523 U.S. at 849); *see also Davis v. Carter*, 555 F.3d 979, 982 (11th Cir. 2009).

In the case at bar, besides the fact that Lee forfeited his liberty interest, which is dispositive of his substantive due process claims[26] as the District Court correctly found, there simply is no plausible basis for concluding that issuing a trespass warning of limited scope to someone with a demonstrated history of verbally abusing, threatening, and even physically battering City employees is "conscience shocking." This is particularly true when the facts

---

[26] As is a finding that Lee had no liberty interest, something this Court should find and which would dispose of Lee's substantive due process claims.

suggest that Lee forfeited any liberty interest he may have had in accessing City Hall on the dates in question, *even putting his history with the City of Gulfport aside.* Stated differently, the undisputed facts demonstrate that Lee was not exercising any sort of *constitutionally protected* liberty interest when he was issued the trespass warnings at issue.[27]

In fact, neither Lee nor any other person has an absolute right to visit Gulfport's City Hall or its Building Department, nor is due process owed when the way in which someone was accessing a governmental forum was not a *constitutionally protected* way in which to access it. Lee's sophistic, inaccurate use of language like "banned" does not change this analysis. Not only did the City have good reasons to bar Lee access during business hours, based on concerns related to protecting the safety and welfare of its employees, and preventing the disruptions that he consistently caused when provided access, but there is no record evidence that anyone at the City was driven by an intention to harm Lee. The District Court was correct in finding that the City did not violate the substantive due

---

[27] Lee seems to take issue with the word "forfeited."

process clause under the executive action test, and this Court should affirm.

**B.** ***The City's informal trespass policy, if analyzed as legislative action, survives rational basis scrutiny.***

The question of whether the City's informal, unwritten trespass policy based on Florida statutory trespass law violates Appellant's substantive due process rights under the Fourteenth Amendment is not one that Lee raised at all until he replied [Doc. 98] to the City's response [Doc. 92] to his Motion for Summary Judgment [Doc. 87]. The City's Motion to Strike [Doc. 109] followed shortly thereafter, pointing out that Lee did not argue anything in his initial summary judgment motion regarding the City's informal trespass policy being legislative action, or how it would be analyzed under a substantive due process analysis. *Id.* "[W]here a new argument is made or new evidence is offered for the first time in a Reply [and not in the motion itself], courts are required to either decide the matter on the merits of the record before it or permit an opportunity for response." *Ajomale v. Quicken Loans, Inc.*, No. 1:17-CV-539-JB-MU, 2020 WL 13553740, at *2 (S.D. Ala. July 7, 2020) (citing *Atl. Specialty Ins. Co. A.S. v. Digit Dirt Worx, Inc.*, 793 F. App'x 896, 901 (11th Cir. 2019)).

In this case, the District Court chose the former, deciding the matter on the merits of the record before it. Because no fundamental rights are involved in this matter, the City's trespass policy was evaluated by the District Court under the deferential rational basis standard. "If legislative action implicates a fundamental right, that action must survive strict scrutiny." *Littlejohn v. Sch. Bd. of Leon Cnty., Fla.*, 132 F.4th, 1232, 1239 (11th Cir. 2025). "If it involves a right that is not fundamental, we subject that action to rational-basis review." *Id.* at 1243. Under that test, the policy must survive a substantive due process challenge if it is rationally related to the achievement of some "legitimate government purpose – a goal – which the enacting government body *could* have been pursuing." *Bannum*, 157 F.3d at 822 (internal citations omitted) (emphasis in original).

"This standard is highly deferential and [courts] hold legislative acts unconstitutional under a rational basis standard in only the most exceptional of circumstances." *Kentner v. City of Sanibel*, 750 F.3d 1274, 1281 (11th Cir. 2014) (internal quotation marks omitted). Here, the District Court had to identify a "purpose – a goal – which the enacting government could have been pursuing." *Bannum*, 157 F.3d at 822. As stated previously, the City has a definite and

important interest in "preserv[ing] the property under its control for the use to which it is lawfully dedicated." *U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns,* 453 U.S. 114, 129-30 (1981) (internal quotation marks omitted). Public safety is also an important and legitimate governmental interest. *Bannum,* 157 F.3d at 823. In this case, Lee had previously proven to be volatile and unpredictable in his relations with the City, as well as violent, and the City had real safety-related concerns when it issued the trespass warnings to him. Lee has threatened not only Mr. O'Reilly but members of the Gulfport City Council. [Doc. 89-4 at 29:15–31:20, 21:4-7]. Preserving the integrity of City Hall and ensuring the safety of its employees were legitimate and definite goals that the City had in issuing the trespass warnings.

Next, the District Court was tasked with determining whether a rational basis existed for the City to believe its policy would "further the hypothesized purpose." *Id.* at 822 (internal quotation marks omitted). The District Court found that the informal trespass policy, authorizing supervisors of city facilities to issue trespass warnings if they have reason to believe an individual has caused or is likely to cause a disruption of services or put the safety of staff or the public

at risk, is sufficiently related to the legitimate governmental interests of public safety and limiting the use of its property to its intended purpose. [Doc. 122, p. 29]. The District Court's analysis is straightforwardly correct on this issue, and should be affirmed, if this Court reaches this issue.

To be sure, Lee's arguments which suggest that hearsay can form the basis for the issuance of a trespass warning, or that individuals are not notified of the basis of trespass warnings, and that individuals are banned are factually inaccurate and inappropriate herein. [Lee's Brief, p. 18]. As clarified previously, Lee was verbally informed of the basis for the issuance of the trespass warnings, as he acknowledged via email. [Doc. 92-4, pp. 2-3]. He was also informed of an ability to appeal his first trespass warning, but informed Mr. O'Reilly that he regarded him, members of the city council, and the mayor as objectively unable to preside over or have anything to do with any appeal, and asked for him to appoint or hire an outside agency to investigate his allegedly unequal treatment.[28]

---

[28] Lee stipulated to entry of summary judgment on Count I of his Complaint, apparently realizing that the allegedly disparate treatment of other food trucks or vendors was the result of so-called "economic protectionism," which Lee promised to address in a future

Finally, Mr. O'Reilly made it clear that supervisors of facilities should either personally witness the behavior giving rise to a trespass warning or base it on staff input. [Doc. 89-4, 45:22–46:6]. As for duration, the City did not have a policy, and its Police Department issued trespass warnings with the understanding that individuals could impliedly ask the issuing authority to rescind them, or appeal to them to do so. [Doc. 89-16, 56:1–57:7]. There was no intention on the City's behalf to permanently ban anyone, as Gulfport Police Chief Vincent made it clear that if a duration was put as indefinite or permanent, it was for the sake of administrative convenience and out of necessity as their system had no ability to track duration. [Doc. 89-16, 15:3-23]. Regardless of any imperfections that Lee may argue the City's informal trespass policy had, it had a definite purpose and goal and was rationally related to the achievement of those goals— that is, public safety, the welfare of its employees, and the integrity of its workplace. This Court should affirm the District Court's ruling on whether the informal trespass policy survives rational basis scrutiny.

---

lawsuit, rather than racism, for which there is no support in the record or otherwise.

### III. Lee cannot demonstrate the existence of a Monell custom or policy that was the "moving force" behind any alleged constitutional violation.

Even if this Court were to find that either of the trespass warnings violated Plaintiff's constitutional rights, which it should not, liability should still not attach to the City under *Monell v. Dep't of Social Servs.,* 436 U.S. 658 (1978). There is no respondeat superior liability for municipalities under 42 U.S.C. § 1983. *Monell,* however, holds that municipalities may be liable for § 1983 claims when they are directly responsible for the constitutional deprivation. *Id.* at 691– 94. To establish that responsibility, and thus liability under *Monell,* a plaintiff must ultimately prove three elements: (1) a municipal action, which can be an express policy, a widespread custom, or an act by an individual with policy-making authority; (2) culpability, meaning, at a minimum, deliberate conduct; and (3) causation, which means the municipal action was the "moving force" behind the constitutional injury. *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,* 520 U.S. 397, 404–07 (1997). Demonstrating a custom that constitutes deliberate indifference to a constitutional right, as required for *Monell* liability, requires a plaintiff to show a persistent

and widespread practice of similar constitutional violations. *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004).

In the instant matter, the only record evidence of any alleged policy or custom Plaintiff has provided on summary judgment are 31 trespass warnings issued by the City's Police Department sporadically from March 2018 to August 2022. Of those, 14 do not have any expiration date, demonstrating the lack of a consistent custom or practice. Six of these were issued to either Lee himself or another individual, Ray Rodriguez, an acquaintance of Lee's. [Doc. 89-2 at 176:13-18]. Five were issued to an "Ada Lewis." Three were issued to a Riley Judd. This clearly indicates that these trespass warnings do not demonstrate a widespread practice. *Church,* 30 F.3d at 1346 n.9 (finding evidence of four isolated incidents over a year prior to the events at issue could not support the finding of a pattern or policy, "[e]ven assuming that they amounted to constitutional violations").

Here, putting aside people who were issued multiple trespass warnings and 14 with no expiration date, the only other trespass warnings with "indefinite" or "never" as a duration were nine issued in a six-month period between December 2020 and June 2021—

hardly evidence of a longstanding custom. Moreover, nowhere in any of these prior trespasses or record evidence is there any indication of appeals, or appellate, issues or due process concerns. Thus, there is no relevant or admissible prior evidence to consider of any preexisting due process violations or patterns, to support culpability for a *Monell* custom or policy.

Notably, Lee pursued no further discovery as to the details of these other trespass warnings, which are from a variety of dissimilar properties, the context in which they were issued, or what led to their issuance. No mention of appeals, or due process, is involved, nor is there any record evidence of any prior concerns with due process brought to policymakers. Therefore, there is no record evidence as to whether these prior trespass warnings are even relevant. Nor does Lee have any evidence in the record that the City's policy-making officials were ever put on notice of any constitutional issue with its informal trespass policy, or the effects thereof.

"Plaintiffs do not allege that these other shootings were deemed unjustified, unconstitutional, or were anything other than legitimate, self-defense shootings." *Whitaker v. Miami-Dade Cnty.*, 126 F. Supp. 3d 1313, 1321 (S.D. Fla. 2015). "[A] plaintiff certainly cannot

establish a widespread unconstitutional practice through prior constitutional actions." *Id.* (internal quotations omitted). Here, Lee has not alleged that these trespass warnings even occurred in a nonpublic forum versus a traditional public forum, or that they resulted in litigation, or involved appeals, let alone that if they did, that any of the trespassed individuals succeeded in demonstrating that their constitutional rights were violated. This absence of evidence of unconstitutionality or notice thereof to policymakers vitiates any notion of municipal liability under *Monell.*

When attempting to state a *Monell* claim based on custom, "[a] pattern of similar constitutional violations … is ordinarily necessary, because a single violation is not so pervasive as to amount to a custom." *Gurrera v. Palm Beach Cnty. Sheriff's Off.*, 657 F. App'x 886, 892-93 (11th Cir. 2016); *see also Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986) ("Normally random acts or isolated incidents are insufficient to establish a custom or policy"). Importantly, "the mere existence of previous citizen complaints does not suffice to show a municipal custom of permitting or encouraging excessive force." *Mettler v. Whitledge,* 165 F.3d 1197, 1205 (8th Cir. 1999); *see also Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir.

1987) ("[T]he number of complaints bears no relation to their validity.").

Here, there is no promulgated municipal policy. Nor is there a policymaker behind any alleged unconstitutional practices. Lee alleges that the City had a custom or practice, but the evidence does not support that any unconstitutional activity occurred which the City's policymakers were on notice of, or in response to which they showed deliberate indifference. This dictates that the level of culpability required for *Monell* liability simply is not present in this case.

Moreover, the trespass policy in place at the time simply followed, or was based in good faith on, Florida statutory trespass law, and was an informal policy wholly based on that state law, and developed by former city managers. [Doc. 89-4, 73:11 – 74:8]. Such managers would not have the authority to set policy for the City.[29] *See Brown*, 520 U.S. at 417 ("In assigning municipal liability under *Monell*, we accordingly distinguish an act of a municipal agent without independent authority to establish policy from the *act of one*

---

[29] Article III, § 301, Gulfport Code of Ordinances, Doc. 89-22; Doc. 89-4, 23:5-7.

*authorized to set policy under local law.*") (emphasis added). Regardless, simply following state trespass law does not amount to a municipal custom or policy, and Lee still would need to show a custom or policy inconsistent with the permissible restrictions in the type of nonpublic forum as to which trespasses were issued, based on the facts of each unique trespass. Nor can, or has, Lee demonstrated that such an unconstitutional "custom" or "policy" was the "moving force behind" a constitutional violation. The record evidence does not allow Lee to make such a showing. As a result, Lee cannot satisfy *Monell*'s requirements for the counts he is appealing.

**<u>CONCLUSION</u>**

Because Lee has no liberty interest in accessing Gulfport's City Hall during business hours, his due process claims fail as a matter of law, and the City's restrictions survive the applicable tests for nonpublic forums under the First Amendment. Even if Lee had a liberty interest, he forfeited it on both of the occasions on which he was issued trespass warnings by trespassing and disrupting the governmental workplace. Under a substantive due process analysis, the City's actions were not intended to harm Lee and were supported by legitimate government interests, and thus were not conscience

60

shocking. The City's informal trespass policy also survives rational basis review. The District Court properly granted summary judgment to the City on Lee's claims for due process violations. This Court should therefore affirm.

DATED: May 8, 2026

Respectfully submitted,

*/s/ Donovan Roper*
Donovan A. Roper, Esq.
Florida Bar No.: 0858544
Ian P. Depagnier, Esq.
Florida Bar No.: 0116385
R. Dustyn Ring, Esq.
Florida Bar No.: 1049924
Roper & Roper, P.A.
116 N. Park Avenue
Apopka, Florida 32703
Tel: 407-884-9944
Fax: 407-884-4343
email@roperandroper.com

# <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) as this Brief contains 12,736 words, excluding the parts exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4. This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a serif typeface using Microsoft Word in Bookman Old Style 14-point font.

DATED: May 8, 2026

<u>/s/ Donovan Roper</u>
Donovan A. Roper, Esq.

## <u>CERTIFICATE OF SERVICE</u>

In accordance with Fed.R.App.P. Rule 25(d), I certify that on May 8, 2026, I electronically filed the foregoing using the Court's CM/ECF system, which will automatically send electronic copies to all counsel of record.

*/s/ Donovan Roper*
Donovan A. Roper, Esq.